**IN THE UNITED STATES COURT OF INTERNATIONAL TRADE**

| | |
|---|---|
| KISWIRE INC. and KISWIRE PINE BLUFF INC., ) | |
| ) | |
| Plaintiffs, ) | Court No. 22-00285 |
| ) | |
| v. ) | **NON-CONFIDENTIAL** |
| ) | Proprietary Information of |
| UNITED STATES, ) | Plaintiffs Removed from |
| ) | Attachments 3, 4, 6, 8, 11-14, |
| Defendant. ) | and 16-17 |

## COMPLAINT

Plaintiffs Kiswire Inc. ("KI") and Kiswire Pine Bluff Inc. ("KPB") (collectively,

"Kiswire" or "Plaintiffs") by and through their counsel, hereby allege and state as follows:

## NATURE OF THE ACTION

1.      Plaintiffs challenge the denial of Protest Nos. 200222100800, 200222100801, and

200222100819 by U.S. Customs and Border Protection ("CBP").  Protest Nos. 200222100801

and 200222100819 were filed by KI, and Protest No. 200222100800 was filed by KPB.

2.      The entries protested consist of grade 1078 and higher tire cord quality wire rod

from South Korea, that are classified under HTSUS 7213.91.3011 ("Bars and rods, hot-rolled, in

irregularly wound coils, or iron or nonalloy steel: Other: Of circular cross section measuring less

than 14 mm in diameter: Not tempered, not treated and not partly manufactured; Tire cord-

quality steel wire rod as defined in statistical note 4 of this chapter.")  At the time the goods were

entered, grade 1078 and higher tire cord quality wire rod from Korea was subject to an

antidumping duty order.  *Carbon and Alloy Steel Wire Rod From Italy, the Republic of Korea,*

*Spain, the Republic of Turkey, and the United Kingdom: Antidumping Duty Orders and Amended*

*Final Affirmative Antidumping Duty Determinations for Spain and the Republic of Turkey*, 83

Fed. Reg. 23,417 (Dep't Commerce May 21, 2018); CBP Message No. 8142301 (May 22, 2018) (provided in **Attachment 1**). CBP collected antidumping duty cash deposits of 41.10 percent on KI's and KPB's grade 1078 and higher tire cord quality wire rod entries from Korea that entered between September 5, 2018 and September 28, 2018 pursuant to the AD order and which were protested via Protest Nos. 200222100800, 200222100801, and 200222100819.

3.      On April 8, 2019, Commerce revoked the antidumping duty ("AD") order on grade 1078 and higher tire cord quality wire rod from South Korea retroactive to entries made on and after May 21, 2018. *Carbon and Alloy Steel Wire Rod From the Republic of Korea and the United Kingdom: Notice of Final Results of Antidumping Duty Changed Circumstances Review*, 84 Fed. Reg. 13,888 (Dep't Commerce Apr. 8, 2019) ("*Wire Rod CCR Final Results*") (provided as **Attachment 2**). CBP was directed to terminate the suspension of liquidation "for all shipments of grade 1078 and higher tire cord quality wire rod, entered, or withdrawn from warehouse, for consumption on or after 5/21/2018, for which an end-use certification was filed with CBP at the time of entry summary." CBP Message No. 9113302 (provided as **Attachment 2**).

4.      In December 2019, Plaintiffs' Customs broker filed post summary corrections to change the entry type from an AD/CVD applicable entry to one that does not have AD/CVD duties and provided CBP with end use certifications for the entries subject to this appeal to demonstrate that the entries satisfied the terms of the revocation and thus were not subject to the AD order on *Carbon and Alloy Steel Wire Rod from Korea*. *See* **Attachment 3** and **Attachment 4**.

5.      For five of the entries subject to this appeal (one warehouse entry and four warehouse withdrawal entries), CBP asserts that the entries were deemed liquidated on October

2

8, 2019.  However, for seven of the entries subject to this appeal (two warehouse entries and five warehouse withdrawal entries), CBP asserts that the entries were deemed liquidated on September 24, 2021.  In both cases, the entries were deemed liquidated without the refund of the AD duties deposited at the time of entry.  *See* **Attachments 3** and **5**.

6.     On March 16, 2022 and again on June 27, 2022, KI protested CBP's failure to refund the AD duties.  *See* **Attachment 6**.  KI's March 16, 2022 protest, Protest No. 200222100801, was denied on April 7, 2022 because the claim was "filed untimely." **Attachment 7**.  CBP indicated in correspondence with counsel that the protest was denied as prematurely filed because the entries subject to the protest had not yet liquidated as not all material was removed from the warehouse.  *See* **Attachment 17**.  KI protested again on June 27, 2022 via Protest No. 200222100819 after submitting documentation to CBP demonstrating that all material imported had been withdrawn from the warehouse.  This protest was denied on July 20, 2022.  CBP again stated that the protest was denied because the claim was "filed untimely." **Attachment 7**.

7.     On March 16, 2022, KPB protested CBP's failure to refund the AD duties on its grade 1078 and higher tire cord quality wire rod entries.  *See* **Attachment 8**.  KPB submitted a request for accelerated disposition on June 29, 2022.  As CBP did not respond to KPB's protest within 30 days, the protest was deemed denied on July 29, 2022.  19 C.F.R. § 174.22(d); s*ee also* **Attachment 9**.

## <u>JURISDICTION</u>

8.     This Court has exclusive jurisdiction pursuant to 28 U.S.C. § 1581(a) as this civil action contests the denial of Plaintiffs' protests.

15430947 v1

## THE PARTIES AND STANDING

9.      Plaintiffs KI and KPB are the importers of record of the merchandise that is the subject of this action.

10.      KI and KPB are also the end users of the imported grade 1078 and above tire cord quality wire rod.  KI and KPB use the imported grade 1078 and above tire cord quality wire rod in the manufacture of tire cord wire at their facilities in Newberry, South Carolina and Pine Bluff, Arkansas.  KI and KPB supply tire cord wire to domestic tire manufacturers.  As the end users of the imported grade 1078 and higher tire cord quality wire rod, KI and KPB prepared end use certifications for all of the entries at issue here and provided those certifications to CBP nearly two years prior to the entries being liquidated.  *See* **Attachments 4** and **13**.

11.      The entries subject to the protests being appealed were deemed liquidated on September 24, 2021.  KI timely filed its first protest on March 16, 2022 and then subsequently re-filed a similar protest on June 27, 2022 after being told by CBP that the first protest was filed prematurely because the entries had not yet liquidated.  *See* **Attachments 6** and **17**.  KPB timely filed its protest on March 16, 2022.  *See* **Attachment 8**.

12.      CBP denied KI's first protest (Protest No. 200222100801) on April 7, 2022 for the following reason:  "Protest denied. Claim is filed untimely."  CBP denied KI's second protest (Protest No. 200222100819) for the exact same reason.  *See* **Attachment 7**.  KPB's protest was deemed denied as CBP did not formally respond to KPB within 30 days of KPB's request for accelerated disposition.  *See* **Attachment 9**.

13.      Plaintiffs therefore have standing to bring this action pursuant to 28 U.S.C. § 2631(a) because KI and KPB are the parties who filed the protests pursuant to Section 514 of the Tariff Act of 1930, *as amended*, 19 U.S.C. § 1514.

15430947 v1

14.     Defendant United States, U.S. Customs and Border Protection, is the party that denied the protests contested herein and is the statutory defendant under 28 U.S.C. § 2631(a).

15.     All AD cash deposits have been paid on the entries subject to this appeal.

## TIMELINESS OF THIS ACTION

16.     Pursuant to 19 U.S.C. § 1514(c)(3), protests must be filed within 180 days of either (A) liquidation, or (B) in circumstances where no liquidation has occurred, "the date of the decision as to which protest is made."  19 U.S.C. § 1514(c)(3); 19 C.F.R. § 174.12(e)(2).

17.     The entries subject to this action were deemed liquidated on September 24, 2021. Plaintiffs timely filed their protests of CBP's deemed liquidation within 180 days, on March 16, 2022.  Plaintiff KI's second protest was filed as a protective measure since CBP asserted in discussions with counsel that the entries subject to KI's first protest had not yet liquidated and thus the protest was premature.  **Attachment 17**.  Plaintiff KI's protests were denied on April 7, 2022 and July 20, 2022.  *See* **Attachment 7**.  Plaintiff KPB's protest was deemed denied on July 29, 2022.  *See* **Attachment 9**.  This action was commenced within 180 days of the date on which Plaintiffs' earliest protest was denied pursuant to 28 U.S.C. § 2636.  ECF No. 1 (October 3, 2022).

## FACTUAL BACKGROUND AND MERCHANDISE AT ISSUE

18.     The merchandise at issue is grade 1078 and higher tire cord quality wire rod produced by POSCO and imported from South Korea under HTSUS 7213.91.3011 between September 5, 2018 and September 28, 2018.

19.     At the time of entry, grade 1078 and higher tire cord quality wire rod from South Korea was subject to an AD order.  The cash deposit rate at the time of entry was 41.10 percent. *Carbon and Alloy Steel Wire Rod From Italy, the Republic of Korea, Spain, the Republic of*

5

*Turkey, and the United Kingdom: Antidumping Duty Orders and Amended Final Affirmative Antidumping Duty Determinations for Spain and the Republic of Turkey*, 83 Fed. Reg. 23,417 (Dep't Commerce May 21, 2018); *see also* CBP Message 8142301 (May 22, 2018) (provided in **Attachment 1**). KI and KPB paid the 41.10 percent antidumping duty cash deposit rate on the entries subject to this appeal.

20.     On September 17, 2018, the domestic wire rod industry requested that Commerce conduct a changed circumstances review and partially revoke the antidumping duty orders on certain carbon alloy and steel wire rod from Korea and the United Kingdom with respect to grade 1078 and higher tire cord quality wire rod, effective May 21, 2018.  *Wire Rod CCR Final Results* (provided in **Attachment 2**).

21.     On April 8, 2019, Commerce published its *Final Results* of the changed circumstances review and revoked the antidumping duty orders on certain carbon alloy and steel wire rod from Korea and the United Kingdom with respect to grade 1078 and higher tire cord quality wire rod.  The revocation was made effective to all unliquidated entries of grade 1078 and higher tire cord quality wire rod that were entered on or after May 21, 2018.  *See* **Attachment 2**.

22.     Pursuant to the *Final Results*, CBP was directed to terminate the suspension of liquidation "for all shipments of grade 1078 and higher tire cord quality wire rod, entered, or withdrawn from warehouse, for consumption on or after 5/21/2018, for which an end-use certification was filed with CBP at the time of entry summary."  That is, to qualify for exclusion from the order, the importer must file *at the time of the Entry Summary filing*, an end use certification that the Grade 1078 and above tire cord quality wire rod will be used only in the production of tire cord wire.  *Wire Rod CCR Final Results* (provided in **Attachment 2**).

(Emphasis added).

    23.    Post Summary Correction ("PSC") is a procedure established by CBP by which importers can "electronically correct entry summary data presented to and accepted by U.S. Customs and Border Protection through" the automated Commercial environment ("ACE").  A PSC "is essentially a new entry summary."  "Post Summary Corrections," *U.S. Customs and Border Protection* (last modified May 24, 2022), available at https://www.cbp.gov/trade/programs-administration/entry-summary/post-summary-correction (provided at **Attachment 10**).

    24.    On April 23, 2019, Commerce issued instructions in message 9113302 instructing CBP to liquidate at a zero rate of duty any entries of grade 1078 and higher tire cord quality wire rod for which end use certifications had been submitted at the time of entry summary.  *See* **Attachment 2**.

    25.    CBP did not issue instructions to importers addressing how to avail themselves of the revocation of the wire rod order for qualifying entries made prior to April 8, 2019, the date of publication of the revocation and imposition of end use certification requirement.  Because Commerce (i) made the effective date of the revocation retroactive to May 21, 2018, and (ii) instructed CBP to lift the suspension of liquidation (and liquidate without AD duties) entries for which end use certifications had been filed "at the time of the Entry Summary filing," it was incumbent upon CBP to establish procedures for the submission of end use certifications for entries that had entered between May 21, 2018 and April 8, 2019.

    26.    On April 23, 2019 and May 3, 2019, Plaintiffs' Customs broker sent several e-mail messages to CBP requesting instructions as to the procedures CBP was requiring of importers to receive refunds of AD duties on previously entered tire cord quality wire rod that

15430947 v1

was no longer subject to the AD order.  *See* **Attachment 11**.  CBP did not respond to these

emails, but did instruct Plaintiffs' Customs broker verbally not to take any action regarding those

entries until receiving further instructions from CBP.

27.    In December 2019, having received no response from CBP to the e-mail

messages sent in April and May 2019, and in the absence of any action by CBP to establish

procedures for claiming refunds on previously entered tire cord quality wire rod covered by

Commerce's revocation, KI and KPB at the suggestion of their Korean supplier of wire rod

attempted to claim the refund of the AD duties on these entries by filing PSCs amending the

entries from AD/CVD applicable entries to entries that do not have AD/CVD duties, and

uploading the required end use certifications to the Document Image System. *See* **Attachment**

**12** (providing the form 7501 entry summaries for all entries subject to this appeal from when

they entered in 2018 and as of October 12, 2022).

28.    On December 17, 2019, Plaintiffs' broker filed the PSCs changing all of the

entries from AD/CVD applicable to AD/CVD not applicable and uploaded complete entry

packages, including the end use certifications, to ACE/DIS for each entry, thereby providing

CBP with information establishing that these entries qualified for AD duty free treatment as they

contain grade 1078 and above tire cord quality wire rod.  Plaintiffs provide in **Attachment 3**

confirmation of the PSCs being filed and provide in **Attachment 4** the end use certifications that

were uploaded for each entry.

29.    On December 18, 2019, CBP confirmed receipt of the uploaded end use

certifications.  *See* **Attachment 13**.

30.    Between January 2020 and August 2020, CBP processed PSCs filed by Plaintiffs

for 11 other entries of grade 1078 and higher tire cord quality wire rod from South Korea that

entered during the period between May 21, 2018 and April 8, 2019 and issued refunds of the AD

cash deposits on those entries.  CBP continued to take no action with respect to the entries

subject to this appeal, which it continued to treat as suspended from liquidation.

31.     On April 15, 2021, CBP denied the PSCs filed for KI's entries (one warehouse

and four warehouse withdrawal entries) with the following message:  "998 _ OTHER - PSC

DENIED. PENDING LIQ INSTRUCTIONS FROM DOC."  *See* **Attachment 14**.  For two of

these four entries where the PSCs were denied (entry nos. DQ7-0221433-8 and DQ7-0222001-

2), CBP's ACE system continued to show that these entries were suspended from liquidation as

of January 2022 as there was an AD suspension code listed in the "Extension/Suspension Status

Code 1" of the Entry Summary Query Response generated at that time.  *See* **Attachment 3**.

32.     On March 23, 2021, Commerce published the *Final Results* for the first

antidumping administrative review of *Carbon and Alloy Steel Wire Rod* from South Korea

covering entries between October 31, 2017 and April 30, 2019.  *Carbon and Alloy Steel Wire

Rod From the Republic of Korea: Final Results of Antidumping Duty Administrative Review;

2017–2019*, 86 Fed. Reg. 15,461 (Dep't Commerce Mar. 23, 2021); CBP Message No. 1118402

(April 28, 2021) (provided in **Attachment 15**).  Commerce determined an AD rate of 0.94

percent for subject steel wire rod produced and exported by POSCO.  CBP subsequently issued

liquidation instructions via message no. 1118402 on April 28, 2021 for all entries produced and

exported by POSCO between October 31, 2017 and April 30, 2019.  **Attachment 15**.  In that

message, CBP noted that the suspension of liquidation for these entries was removed with the

publication of the *Final Results* of the administrative review on March 23, 2021.

33.     On April 12, 2021, in response to an inquiry from Plaintiffs' broker, a CBP

Supervisory Import Specialist stated that the entries were deemed liquidated by operation of law

and were past the protest deadline.  *See* **Attachment 16** (providing correspondence between Plaintiffs' broker and CBP).  One week later, on April 19, 2021, the same CBP Supervisory Import Specialist advised the broker that the entries "are in fact suspended and have NOT deemed liquidated by operation of law."  The same CBP Supervisory Import Specialist confirmed again the next day that the entries were not liquidated, but in fact were suspended from liquidation.  *Id.*

34.     After no action was taken on these entries for three months, Plaintiffs' broker followed up with CBP on July 14, 2021 concerning the liquidation status of the entries.  A CBP Supervisory Import Specialist advised the broker for the third time that the entries remained suspended and no further updates were available.  *See* **Attachment 16**.

35.     Plaintiffs' broker followed up with Assistant Center Director Christopher Polashock.  Mr. Polashock stated on July 15, 2021 that "It is CBP's position that DOC liq message 9113302 does not apply, as the end use certification was not filed with CBP <u>at time of entry summary,</u> as required by the DOC liq messages" and that the "entries are currently under the purview of the Base Metals Center."  **Attachment 16** (emphasis in original).  The Base Metals Center also confirmed on that same day that DOC message 9113302 does not apply, and that the entries will remain in suspended status until DOC publishes a liquidation message for the entries.

36.     Given these communications from CBP, Plaintiffs understood that its entries deemed liquidated on September 24, 2021, *i.e.* the date which was six months after the suspension of liquidation was lifted.  The suspension of liquidation was lifted on March 23, 2021 with the publication of the *Final Results* in the Federal Register for the first AD administrative review of wire rod from South Korea.  According to CBP's Official Notice of Extension,

Suspension and Liquidation, KI's one warehouse entry deemed liquidated on October 8, 2019. However, according to the same source, KPB's two warehouse in entries deemed liquidated on September 24, 2021.  *See* **Attachment 5**.  All of the protested entries were liquidated without any refunds of AD cash deposits issued to Plaintiffs.

37.     On March 16, 2022, KI and KPB timely filed Protest Numbers 200222100801 and 200222100800, respectively.  *See* **Attachments 6** and **8**.  KI and KPB explained that the entries satisfy the express terms of the partial revocation of the AD order on certain carbon and alloy steel wire rod from Korea and thus should be liquidated without assessment of AD duties. *Id.*  KI and KPB further explained that it had provided end use certifications and mill test certificates for each of the entries to demonstrate that the product imported was grade 1078 and higher tire cord quality wire rod.  *Id.*  KI and KPB also attached the mill test certificates and end use certifications to their protests.  KI and KPB thus requested that its protest be granted and that it be refunded the 41.10 percent AD cash deposits that it had paid upon entry for these entries.

38.     KI's Protest Number 200222100801 was denied on April 7, 2022.  The reason for the denial was that "Protest denied. Claim is filed untimely."  **Attachment 7**.

39.     Counsel then contacted CBP for further explanation.  A Supervisory Import Specialist at CBP explained that the protest was premature because the entries subject to the protest had not yet liquidated.  **Attachment 17**.  According to the Supervisory Import Specialist, a small quantity of material from the one warehouse entry remained in the warehouse and thus pursuant to 19 C.F.R. § 159.52, the warehouse and warehouse withdrawal entries could not be liquidated.

40.     On May 11, 2022, the same Supervisory Import Specialist explained that in order to liquidate the warehouse entry (and warehouse withdrawal entries), the importer needed to

submit certain information including the weight (exact amount), what came out on each withdrawal and what remained, and the last withdrawal showing a balance of zero. **Attachment 17**. Counsel then provided the documentation requested to demonstrate that all of the tire cord quality wire rod had been removed from the warehouse. *Id.* An entry officer for the Base Metals Center confirmed that the evidence provided was acceptable to "OK close." On June 21, 2022, the same Supervisory Import Specialist that previously explained to counsel that the protest was premature because the entries subject to protest had not yet liquidated told counsel that the warehouse entry in fact was deemed liquidated on October 8, 2019 pursuant to DOC message 9113302. *See* **Attachment 17**. This latest explanation is directly contrary to what KI's broker was told by CBP's Assistant Director for Validation and Compliance, via e-mail on July 15, 2021, who stated that "It is CBP's position that DOC liq message 9113302 does not apply." **Attachment 16**.

41.     On June 27, 2022, KI subsequently re-filed its protest via Protest Number 200222100819. *See* **Attachment 6**. KI also filed a request for accelerated disposition of this protest.

42.     KI's Protest Number 200222100819 was denied on July 20, 2022. The reason for the denial was again that "Protest denied. Claim is filed untimely." *See* **Attachment 7**.

43.     KPB filed a request for accelerated disposition on June 29, 2022. KPB's Protest Number 200222100800 was deemed denied on July 29, 2022, as CBP did not respond to KPB's protest. *See* **Attachment 9**.

44.     On September 30, 2022, CBP without explanation issued to KPB a check in the amount of $181,564.70, consisting of a duty refund of $164,296.43 and interest in the amount of $17,268.27. In response to an inquiry from KPB's broker, CBP informed the broker via email

that the check pertains to warehouse entry DQ7-0221316-5.  This warehouse entry is associated

with four warehouse withdrawal entries that were subject to KPB's protest and this appeal.  KPB

deposited $426,848.16 in AD duties for these four warehouse withdrawal entries.  KPB has been

unable to discern the basis of CBP's calculation of this check amount.  CBP's ACE system

continues to show this entry as having been deemed liquidated on September 24, 2021 at the rate

of duty asserted on entry.

45.     This appeal followed.

## STATEMENT OF CLAIMS

### Count I

46.     Plaintiffs incorporate by reference paragraphs 1-45 of this Complaint.

47.     Plaintiffs' protests were timely filed within 180 days of the deemed liquidation of

the entries at issue.  CBP repeatedly told Plaintiffs that CBP Message No. 9113302 did not apply

and that CBP was awaiting further instructions from Commerce.  Those further instructions came

in the form of CBP Message No. 1118402 at the conclusion of the first AD administrative review

of wire rod from South Korea.  As CBP took no action to liquidate Plaintiffs' entries within six

months of the publication of the first AD administrative review results in the *Federal Register*,

Plaintiffs' entries were deemed liquidated on September 24, 2021.  Indeed, for KPB's two

warehouse entries, the deemed liquidation date is September 24, 2021 according to CBP's

Official Notice of Extension, Suspension and Liquidation.  Both KI and KPB protested the

deemed liquidations within 180 days on March 16, 2022.

### Count II

48.     Plaintiffs incorporate by reference paragraphs 1-47 of this Complaint.

49.     Neither KI's entries (DQ7-0221459-3, DQ7-0221433-8, DQ7-0221727-3, DQ7-

0222001-2, DQ7-0222045-9), nor KPB's entries (DQ7-0221316-5, DQ7-0221382-7, DQ7-

13

0221399-1, DQ7-0221785-1, DQ7-0222064-0, DQ7-0222061-6, DQ7-0221999-8) were deemed liquidated by operation of law on October 8, 2019, but rather remained in suspended status until September 24, 2021.

50.     CBP advised Plaintiffs' broker on four separate occasions that its entries had not deemed liquidated and that the entries remained suspended pending further instructions from Commerce.  For two of KI's warehouse withdrawal entries, CBP's ACE system as recently as January 2022 continued to show that the entries were suspended due to ongoing AD administrative reviews, despite the fact that the corresponding warehouse entry reports a deemed liquidation date of October 8, 2019.  According to CBP's Official Notice of Extension, Suspension and Liquidation, KPB's two warehouse withdrawal entries, which contain the same grade 1078 and higher tire cord quality wire rod and were imported during the same month as KI's entries, report a deemed liquidation date of September 24, 2021.

51.     CBP's denial of KI's protest on the ground that the entries were deemed liquidated by operation of law on October 8, 2019 is arbitrary and capricious and contrary to law. CBP repeatedly advised KI's broker that the entries remained suspended from liquidation pending further instructions from Commerce.  Furthermore, CBP advised KI's counsel after KI's first protest was denied that in fact the entries had not yet liquidated because CBP believed that there was still material left in the warehouse.  It was not until counsel provided CBP with a reconciliation that CBP was able to finalize liquidation of the entries.  Finally, CBP has taken the position that KPB's entries, which contain the same grade 1078 and higher tire cord quality wire rod and were imported during the same month, were deemed liquidated nearly two years later on September 24, 2021.

## Count III

52.     Plaintiffs incorporate by reference paragraphs 1-51 of this Complaint.

15430947 v1

53.     CBP's assessment of AD duties on the entries subject to this complaint was unlawful because Plaintiffs' entries of grade 1078 and higher tire cord quality wire rod were excluded from the AD order as amended by the *Wire Rod CCR Final Results*.  Plaintiffs satisfied the terms of the scope exclusion by supplying mill test certificates and end use certifications via the PSC process and also during the protest process.  Commerce expressly determined that the changed circumstances review (and the refund of the AD cash deposits) should apply to these entries by making the revocation retroactive to May 21, 2018, and CBP failed to establish any alternative process for claiming refunds on previously entered grade 1078 and above tire cord quality wire rod.

54.     Accordingly, CBP's liquidation of the entries at the 41.10 percent antidumping duty rate asserted in the original entry is unlawful.  Plaintiffs are entitled to the refund of the AD cash deposits paid at entry for the entries subject to this appeal plus interest as provided by law.

## **Count IV**

55.     Plaintiffs incorporate by reference paragraphs 1-54 of this Complaint.

56.     CBP's denial of Plaintiffs' protests and assessment of AD duties on the entries subject to this appeal is arbitrary and capricious.  The treatment of KI's and KPB's entries from this appeal is inconsistent with CBP's treatment of 11 other similarly situated entries from around the same period of time that CBP has liquidated without AD duties and refunded the AD cash deposits.  Just as with the entries subject to this appeal, Plaintiffs filed PSCs and submitted end use certifications and mill test certificates for these 11 entries to demonstrate that the product entered was grade 1078 and above tire cord quality wire rod for use in production of tire cord wire.  There is no factual or legal basis for treating the entries subject to this appeal different than the 11 other entries for which CBP has liquidated and refunded the AD duties.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs respectfully requests that this Court render judgment against Defendant, order (i) the refund of antidumping duty cash deposits paid on the entries subject to this appeal, and (ii) the payment of applicable interest thereon and grant such other and further relief as the Court shall deem just and proper.

Respectfully submitted,

/s/ R. Will Planert
Julie C. Mendoza
Donald B. Cameron, Jr.
R. Will Planert
Brady W. Mills
Mary S. Hodgins
Eugene Degnan
Edward J. Thomas III
Jordan L. Fleischer
Nicholas C. Duffey

**MORRIS, MANNING & MARTIN LLP**
1401 Eye Street, NW, Suite 600
Washington, D.C. 20005
wplanert@mmmlaw.com
(202) 216-4819

*Counsel to Kiswire Inc. and Kiswire Pine Bluff Inc.*

Dated: October 12, 2022

15430947 v1

***Kiswire Inc. and Kiswire Pine Bluff Inc. v. United States***
U.S. Court of International Trade
Ct. No. 22-285

List of Attachments to Kiswire Inc.'s ("KI") and Kiswire Pine Bluff Inc.'s ("KPB") Complaint

| Attachment No. | Description |
|---|---|
| 1 | *Carbon and Alloy Steel Wire Rod From Italy, the Republic of Korea, Spain, the Republic of Turkey, and the United Kingdom: Antidumping Duty Orders and Amended Final Affirmative Antidumping Duty Determinations for Spain and the Republic of Turkey*, 83 Fed. Reg. 23,417 (Dep't Commerce May 21, 2018) and CBP Message No. 8142301 (May 22, 2018) |
| 2 | *Carbon and Alloy Steel Wire Rod From the Republic of Korea and the United Kingdom: Notice of Final Results of Antidumping Duty Changed Circumstances Review*, 84 Fed. Reg. 13,888 (Dep't Commerce Apr. 8, 2019) and CBP Message No. 9113302 (Apr. 23, 2019) |
| 3 | Entry Summary Query Responses Showing Post Summary Correction Filing on December 17, 2019 and Entry Summary Query Responses from January 2022 for Entry Nos. DQ7-0222001-2 and DQ7-0221433-8 |
| 4 | End Use Certifications and Mill Test Certificates for Entries Subject to Appeal Demonstrating Product Entered Was Grade 1078 and Higher Tire Cord Quality Wire Rod |
| 5 | Screenshots from U.S. Customs and Border Protection's Official Notice of Extension, Suspension, and Liquidation Website |
| 6 | KI's Protest Nos. 200222100801 and 200222100819 |
| 7 | Denial of KI's Protest Nos. 200222100801 and 200222100819 |
| 8 | KPB's Protest No. 200222100800 |
| 9 | Denial of KPB's Protest No. 200222100800 |
| 10 | "Post Summary Corrections," *U.S. Customs and Border Protection* (last modified May 24, 2022) |
| 11 | April 23, 2019 and May 3, 2019 E-mails Sent to U.S. Customs and Border Protection |
| 12 | Form 7501 Entry Summaries from 2018 and from October 2022 |
| 13 | Entry Summary Status Notification Confirming Receipt of Uploaded End Use Certifications |
| 14 | Denial of KI's Post Summary Corrections |
| 15 | *Carbon and Alloy Steel Wire Rod From the Republic of Korea: Final Results of Antidumping Duty Administrative Review; 2017–2019*, 86 Fed. Reg. 15,461 (Dep't Commerce Mar. 23, 2021) and CBP Message No. 1118402 (April 28, 2021) |
| 16 | Correspondence Between KI's and KPB's Broker and U.S. Customs and Border Protection Between April 2020 – July 2021 |
| 17 | Correspondence Between KI's and KPB's Counsel and U.S. Customs and Border Protection Between April 2022 – June 2022 |

# Attachment 1

***Carbon and Alloy Steel Wire Rod From Italy, the Republic of Korea, Spain, the Republic of Turkey, and the United Kingdom: Antidumping Duty Orders and Amended Final Affirmative Antidumping Duty Determinations for Spain and the Republic of Turkey*, 83 Fed. Reg. 23,417 (Dep't Commerce May 21, 2018) and CBP Message No. 8142301 (May 22, 2018)**


review. The petitioners withdrew their request for review within the 90-day deadline. Because Commerce received no other requests for review of the above-referenced companies, and no other requests were made for a review of the AD order on honey from China with respect to other companies, we are rescinding the administrative review covering the period December 1, 2016, through November 30, 2017, in full, in accordance with 19 CFR 351.213(d)(1).

**Assessment**

Commerce will instruct U.S. Customs and Border Protection (CBP) to assess antidumping duties on all appropriate entries of honey from China during the POR at rates equal to the cash deposit rate for estimated antidumping duties required at the time of entry, or withdrawal from warehouse, for consumption, in accordance with 19 CFR 351.212(c)(1)(i). Commerce intends to issue appropriate assessment instructions to CBP 15 days after publication of this notice in the **Federal Register**.

**Notification to Importers**

This notice serves as the only reminder to importers of their responsibility under 19 CFR 351.402(f)(2) to file a certificate regarding the reimbursement of antidumping duties prior to liquidation of the relevant entries during this review period. Failure to comply with this requirement could result in the presumption that reimbursement of antidumping duties occurred and the subsequent assessment of doubled antidumping duties.

**Notification Regarding Administrative Protective Order**

This notice also serves as the only reminder to parties subject to administrative protective orders (APO) of their responsibility concerning the disposition of proprietary information disclosed under APO in accordance with 19 CFR 351.305(a)(3), which continues to govern business proprietary information in this segment of the proceeding. Timely written notification of the return or destruction of APO materials or conversion to judicial protective order is hereby requested. Failure to comply with the regulations and the terms of an APO is a sanctionable violation.

This notice is issued and published in accordance with sections 751(a)(1) and 777(i)(1) of the Act and 19 CFR 351.213(d)(4).

Dated: May 15, 2018.

**James Maeder,**
*Associate Deputy Assistant Secretary for Antidumping and Countervailing Duty Operations performing the duties of Deputy Assistant Secretary for Antidumping and Countervailing Duty Operations.*

[FR Doc. 2018–10778 Filed 5–18–18; 8:45 am]

**BILLING CODE 3510–DS–P**

---

**DEPARTMENT OF COMMERCE**

**International Trade Administration**

**[A–475–836, A–580–891, A–469–816, A–489–831, A–412–826]**

**Carbon and Alloy Steel Wire Rod From Italy, the Republic of Korea, Spain, the Republic of Turkey, and the United Kingdom: Antidumping Duty Orders and Amended Final Affirmative Antidumping Duty Determinations for Spain and the Republic of Turkey**

**AGENCY:** Enforcement and Compliance, International Trade Administration, Department of Commerce.

**SUMMARY:** Based on affirmative final determinations by the Department of Commerce (Commerce) and the International Trade Commission (ITC), Commerce is issuing antidumping duty orders on carbon and alloy steel wire rod (wire rod) from Italy, the Republic of Korea (Korea), Spain, the Republic of Turkey (Turkey), and the United Kingdom. In addition, Commerce is amending its affirmative final determinations for Spain and Turkey to correct ministerial errors.

**DATES:** Applicable May 21, 2018.

**FOR FURTHER INFORMATION CONTACT:** Mark Flessner at (202) 482–6312 (Italy), Lingjun Wang at (202) 482–2316 (Korea), Chelsey Simonovich or Davina Friedmann at (202) 482–1979 or (202) 482–0698 (Spain), Ryan Mullen or Ian Hamilton at (202) 482–5260 and (202) 482–4798, respectively (Turkey), and Alice Maldonado at (202) 482–4682 (United Kingdom), AD/CVD Operations, Enforcement and Compliance, International Trade Administration, Department of Commerce, 1401 Constitution Avenue NW, Washington, DC 20230.

**SUPPLEMENTARY INFORMATION:**

**Background**

In accordance with sections 735(a), 735(d) and 777(i)(1) of the Tariff Act of 1930, as amended (Act), and 19 CFR 351.210(c), on March 28, 2018, Commerce published its affirmative final determinations in the less-than-fair-value (LTFV) investigations of wire

rod from Italy, Korea, Spain, Turkey, and the United Kingdom.[1]

On March 27, 2018, Nucor Corporation, a petitioner in these investigations (the petitioner), alleged that Commerce made a ministerial error in the *Turkey Final Determination* with regard to programming language identifying the U.S. date of sale for respondent Habas Sinai ve Tibbi Gazlar Istihsal Endustrisi A.S. (Habas).[2] On April 13, 2018, Commerce issued a ministerial error memorandum agreeing that it made a ministerial error, but found that revisions to the programming language had no impact on the final margin for Habas.[3] On April 17, 2018, the petitioner commented on Commerce's ministerial error memorandum and alleged that Commerce misplaced the revised programming language used to correct Habas' U.S. date of sale, which incorrectly resulted in no change to the calculated margin.[4] Habas did not comment on either allegation.

On April 3, 2018, Global Steel Wire S.A., CELSA Atlantic S.A., and Compañía Española de Laminación (collectively, CELSA) alleged that Commerce made ministerial errors by mischaracterizing the destination codes in the final margin program in the *Spain Final Determination*. Additionally, CELSA alleges that Commerce failed to deduct all applicable U.S. constructed

---

[1] *See Carbon and Alloy Steel Wire Rod From Italy: Final Determination of Sales at Less Than Fair Value,* 83 FR 13230 (March 28, 2018); *Carbon and Alloy Steel Wire Rod From the Republic of Korea: Final Affirmative Determination of Sales at Less Than Fair Value and Final Negative Determination of Critical Circumstances,* 83 FR 13228 (March 28, 2018) and the accompanying Issues and Decision Memorandum; *Carbon and Alloy Steel Wire Rod From Spain: Final Determination of Sales at Less Than Fair Value, and Final Determination of Critical Circumstances, in Part,* 83 FR 13233 (March 28, 2018) (*Spain Final Determination*) and the accompanying Issues and Decision Memorandum; *Carbon and Alloy Steel Wire Rod from Turkey: Final Determination of Sales at Less Than Fair Value and Final Negative Determination of Critical Circumstances,* 83 FR 13249 (March 28, 2018) (*Turkey Final Determination*) and the accompanying Issues and Decision Memorandum; *Carbon and Alloy Steel Wire Rod from the United Kingdom: Final Affirmative Determination of Sales at Less Than Fair Value and Final Affirmative Determination of Critical Circumstances,* 83 FR 13252 (March 28, 2018) and the accompanying Issues and Decision Memorandum.

[2] *See* Petitioner's Letter, "Carbon and Alloy Steel Wire Rod From the Republic of Turkey: Ministerial Error Allegation," dated March 27, 2018.

[3] *See* Memorandum, "Antidumping Duty Investigation of Carbon and Alloy Steel Wire Rod From Turkey: Allegation of Ministerial Error in the Final Determination," dated April 13, 2018.

[4] *See* Petitioner's Letter, "Carbon and Alloy Steel Wire Rod from the Republic of Turkey: Comments on the Department's Ministerial Error Memorandum," dated April 17, 2018.

export price (CEP) expenses in the margin calculation program.[5]

On May 11, 2018, the ITC notified Commerce of its affirmative final determinations that an industry in the United States is materially injured within the meaning of section 705(b)(1)(A)(i) and 705(d) of the Act, by reason of LTFV imports of subject merchandise from Italy, Korea, Spain, Turkey, and the United Kingdom, and its determinations that critical circumstances do not exist with respect to imports of wire rod from Spain and the United Kingdom that are subject to Commerce's affirmative critical circumstances findings.[6]

**Scope of the Orders**

The product covered by these orders is wire rod from Italy, Korea, Spain, Turkey, and the United Kingdom. For a complete description of the scope of the orders, *see* the Appendix to this notice.

**Amendments to Final Determinations**

With respect to the *Turkey Final Determination,* Commerce reviewed the record and agrees that the error identified by the petitioner with respect to the placement of the revised programming language constitutes a ministerial error within the meaning of section 735(e) of the Act and 19 CFR 351.224(f).[7] Therefore, pursuant to 19 CFR 351.224(e), Commerce is amending the *Turkey Final Determination* to reflect the correction of this ministerial error in the calculation of the final margin assigned to Habas, which changes from 4.74 percent to 4.93 percent.[8] In addition, because the "all-others" rate is based on the margins for Habas and the other mandatory respondent, Icdas Celik Enerji Tersane ve Ulasim Sanayi A.S. (Icdas),[9] we are revising the "all-others" rate, which changes from 6.34 percent *ad valorem* to 6.44 percent *ad valorem,* consistent with section 735(c)(5)(A) of the Act, as stated in the *Turkey Final Determination.*[10]

With respect to the *Spain Final Determination,* Commerce reviewed the record and agrees that the errors identified by CELSA constitute ministerial errors within the meaning of section 735(e) of the Act and 19 CFR 351.224(f) and that it unintentionally incorrectly defined CELSA's U.S. destination codes in the final margin calculation program.[11] Commerce also finds that it unintentionally failed to deduct one of CELSA's CEP expenses in the final margin calculation program.[12]

Therefore, pursuant to 19 CFR 351.224(e), Commerce is amending the *Spain Final Determination* to reflect the correction of ministerial errors made in the margin calculation for CELSA, which changes the final margin from 11.08 percent to 10.11 percent. In addition, because the "all-others" rate in the *Spain Final Determination* was based on the estimated weighted-average dumping margin calculated for CELSA,[13] Commerce, consistent with section 735(c)(5)(A) of the Act, is also amending the "all-others" rate, which changes from 11.08 percent *ad valorem* to 10.11 percent *ad valorem,* as stated in the *Spain Final Determination.*

**Antidumping Duty Orders**

In accordance with sections 735(b)(1)(A)(i) and 735(d) of the Act, the ITC notified Commerce of its final determinations in these investigations, in which it found that an industry in the United States is materially injured by reason of imports of wire rod from Italy, Korea, Spain, Turkey, and the United Kingdom.[14] Therefore, in accordance with section 735(c)(2) of the Act, we are issuing these antidumping duty orders. Because the ITC determined that imports of wire rod from Italy, Korea, Spain, Turkey, and the United Kingdom are materially injuring a U.S. industry, unliquidated entries of such merchandise from Italy, Korea, Spain, Turkey, and the United Kingdom, entered or withdrawn from warehouse for consumption, are subject to the assessment of antidumping duties.

Therefore, in accordance with section 736(a)(1) of the Act, Commerce will direct U.S. Customs and Border Protection (CBP) to assess, upon further instruction by Commerce, antidumping duties equal to the amount by which the normal value of the merchandise exceeds the export price (or constructed export price) of the merchandise, for all relevant entries of wire rod from Italy, Korea, Spain, Turkey, and the United Kingdom. Antidumping duties will be assessed on unliquidated entries of wire rod from Italy, Korea, Spain, Turkey, and the United Kingdom entered, or withdrawn from warehouse, for consumption on or after October 31, 2017, the date of publication of the *Preliminary Determinations.*[15]

**Estimated Weighted-Average Dumping Margins**

The estimated weighted-average antidumping duty margin percentages and cash deposit rates are as follows:

| Exporter/producer | Weighted-average dumping margins |
| --- | --- |
| Italy: | |
|     Ferriere Nord S.p.A./Acciaierie di Verona S.p.A[16] | 12.41 |
|     Ferriera Valsider S.p.A | 18.89 |
|     All-Others | 12.41 |
| Korea: | |
|     POSCO | 41.10 |

---

[5] *See* CELSA's Letter, "Antidumping Duty Investigation of Carbon and Alloy Steel Wire Rod From Spain: Ministerial Errors Contained in the Final Determination," dated April 3, 2018.

[6] *See* Letter from the ITC to the Honorable Gary Taverman, May 11, 2018 (Notification of Final Determinations); *see also Carbon and Certain Alloy Steel Wire Rod From Italy, Korea, Spain, Turkey, and the United Kingdom,* Investigation Nos. 701–TA–573–574 and 731–TA–1350, 1351, 1354, 1355, and 1358 (Final) (May 2018).

[7] *See* Memorandum, "Antidumping Duty Investigation of Carbon and Alloy Steel Wire Rod From Turkey: Allegation of Ministerial Error Memorandum for the Amended Final Determination," dated May 16, 2018.

[8] *Id.* at 3–4.

[9] Icdas' final margin remains unchanged; *see Turkey Final Determination,* 83 FR at 13250.

[10] *See* Memorandum, "Antidumping Duty Investigation of Carbon and Alloy Steel Wire Rod From Turkey: Calculation of All-Others' Rate in Amended Final Determination," dated May 16, 2018.

[11] *See* Memorandum, "Antidumping Duty Investigation of Carbon and Alloy Steel Wire Rod From Spain: Ministerial Error Memorandum," dated May 15, 2018.

[12] *Id.*

[13] *See Spain Final Determination.*

[14] *See* Notification of ITC Final Determinations.

[15] *See Carbon and Alloy Steel Wire Rod from Italy: Preliminary Affirmative Determination of Sales at Less Than Fair Value,* 82 FR 50381 (October 31, 2017); *Carbon and Alloy Steel Wire Rod from the Republic of Korea: Preliminary Affirmative Determination of Sales at Less Than Fair Value, and Preliminary Negative Determination of Critical Circumstances,* 82 FR 50386 (October 31, 2017); *Carbon and Alloy Steel Wire Rod from Spain: Preliminary Affirmative Determination of Sales at Less Than Fair Value and Preliminary Determination of Critical Circumstances, in Part,* 82 FR 50389 (October 31, 2017); *Carbon and Alloy Steel Wire Rod from Turkey: Preliminary Affirmative Determination of Sales at Less Than Fair Value, and Preliminary Negative Determination of Critical Circumstances,* 82 FR 50377 (October 31, 2017); *Carbon and Alloy Steel Wire Rod from the United Kingdom: Preliminary Affirmative Determination of Sales at Less Than Fair Value, and Preliminary Affirmative Determination of Critical Circumstances,* 82 FR 50394 (October 31, 2017) (collectively, *Preliminary Determinations*).

**Federal Register** / Vol. 83, No. 98 / Monday, May 21, 2018 / Notices · 23419

| Exporter/producer | | |
|---|---|---|
| All-Others ................................................................................................................. | 41.10 | |
| Spain: | | |
| Global Steel Wire S.A./CELSA Atlantic S.A./Compañía Española de Laminación ............. | 10.11 | |
| ArcelorMittal Espana S.A ........................................................................................... | 32.64 | |
| All-Others ................................................................................................................. | 10.11 | |

| | Weighted-average dumping margins (percent) | Cash-deposit rate (adjusted for export subsidies) (percent) |
|---|---|---|
| Turkey: | | |
| Habas Sinai ve Tibbi Gazlar Istihsal Endustrisi A.S ................................................... | 4.93 | 1.05 |
| Icdas Celik Enerji Tersane ve Ulasim Sanayi A.S ...................................................... | 7.94 | 4.15 |
| All-Others ................................................................................................................. | 6.44 | 2.59 |

| | Weighted-average dumping margins | |
|---|---|---|
| United Kingdom: | | |
| British Steel Limited .................................................................................................. | 147.63 | |
| Longs Steel UK Limited ............................................................................................. | 147.63 | |
| All-Others ................................................................................................................. | 147.63 | |

## Continuation of Suspension of Liquidation

In accordance with section 735(c)(1)(B) of the Act, Commerce will instruct CBP to continue to suspend liquidation of all relevant entries of wire rod from Italy, Korea, Spain, Turkey, and the United Kingdom, effective the date of publication of the ITC's notice of final determinations in the **Federal Register**. These instructions suspending liquidation will remain in effect until further notice.

Commerce will also instruct CBP to require cash deposits equal to the amounts as indicated below, which are adjusted for certain countervailable export subsidies, where appropriate. Accordingly, effective on the date of publication of the ITC's final affirmative injury determinations in the **Federal Register**, CBP will require, at the same time as importers would normally deposit estimated duties on the subject merchandise, a cash deposit equal to the weighted-average dumping margins, adjusted for countervailable export subsidies, where appropriate, listed below.[17] The relevant "all-others" rates apply to all producers or exporters not specifically listed below.

## Provisional Measures

Section 733(d) of the Act states that the suspension of liquidation pursuant to an affirmative preliminary determination may not remain in effect for more than four months, except

where exporters representing a significant proportion of exports of the subject merchandise request that Commerce extend the four-month period to no more than six months. At the request of exporters that account for a significant proportion of wire rod from Italy, Korea, Spain, Turkey, and the United Kingdom, Commerce extended the four-month period to six months in each case.[18] Commerce published the *Preliminary Determinations* for all five underlying investigations on October 31, 2017. Therefore, the extended period, beginning on the date of publication of the *Preliminary Determinations,* ended on April 28, 2018. Furthermore, section 737(b) of the Act states that the collection of final, estimated cash deposits will begin on the date of publication of the ITC's final injury determinations.

Therefore, in accordance with section 733(d) of the Act and our practice, Commerce will instruct CBP to terminate the suspension of liquidation and to liquidate, without regard to antidumping duties, unliquidated entries of wire rod from Italy, Korea, Spain, Turkey, and the United Kingdom entered, or withdrawn from warehouse, for consumption after April 28, 2018, the final day on which the provisional measures were in effect in these proceedings, until and through the day preceding the date of publication of the ITC's final injury determinations in the

**Federal Register**. Suspension of liquidation will resume on the date of publication of the ITC's final determinations in the **Federal Register**.

## Critical Circumstances

The ITC notified Commerce of its determinations that critical circumstances do not exist with respect to imports of wire rod from Spain and the United Kingdom subject to Commerce's critical circumstances finding.[19] With regard to the ITC's negative critical circumstances determinations on imports of subject merchandise from Spain and the United Kingdom, Commerce will instruct CBP to lift suspension and to refund any cash deposits made to secure the payment of estimated antidumping duties with respect to entries of subject merchandise entered, or withdrawn from warehouse, for consumption on or after August 2, 2017 (*i.e.,* 90 days prior to the date of publication of the *Preliminary Determinations*), but before October 31, 2017, (*i.e.,* the date of publication of the *Preliminary Determinations*).

## Notification to Interested Parties

This notice constitutes the antidumping orders with respect to wire rod from Italy, Korea, Spain, Turkey, and the United Kingdom, pursuant to section 736(a) of the Act. Interested parties can find a list of antidumping duty orders currently in effect at *http://enforcement.trade.gov/stats/iastats1.html*.

---

[16] Ferriere Nord S.p.A. and Acciaierie di Verona S.p.A. were treated as a single entity for the final determination.

[17] *See* section 736(a)(3) of the Act.

[18] *See Carbon and Alloy Steel Wire Rod from Italy, the Republic of Korea, Spain, Turkey, and the United Kingdom: Postponement of Final Determinations of Less-Than-Fair-Value Investigation and Extension of Provisional Measures,* 82 FR 51613 (November 7, 2017).

[19] Notification of ITC Final Determinations.

These amended final determinations and orders are issued and published in accordance with sections 735(e) and 736(a) of the Act and 19 CFR 351.211(b) and 351.224(e) and (f).

Dated: May 16, 2018.

**Gary Taverman,**

*Deputy Assistant Secretary for Antidumping and Countervailing Duty Operations, performing the non-exclusive functions and duties of the Assistant Secretary for Enforcement and Compliance.*

## Appendix

**Scope of the Orders**

The products covered by these orders are certain hot-rolled products of carbon steel and alloy steel, in coils, of approximately round cross section, less than 19.00 mm in actual solid cross-sectional diameter. Specifically excluded are steel products possessing the above-noted physical characteristics and meeting the Harmonized Tariff Schedule of the United States (HTSUS) definitions for (a) stainless steel; (b) tool steel; (c) high-nickel steel; (d) ball bearing steel; or (e) concrete reinforcing bars and rods. Also excluded are free cutting steel (also known as free machining steel) products (*i.e.,* products that contain by weight one or more of the following elements: 0.1 percent or more of lead, 0.05 percent or more of bismuth, 0.08 percent or more of sulfur, more than 0.04 percent of phosphorous, more than 0.05 percent of selenium, or more than 0.01 percent of tellurium). All products meeting the physical description of subject merchandise that are not specifically excluded are included in this scope.

The products under these orders are currently classifiable under subheadings 7213.91.3011, 7213.91.3015, 7213.91.3020, 7213.91.3093; 7213.91.4500, 7213.91.6000, 7213.99.0030, 7227.20.0030, 7227.20.0080, 7227.90.6010, 7227.90.6020, 7227.90.6030, and 7227.90.6035 of the HTSUS. Products entered under subheadings 7213.99.0090 and 7227.90.6090 of the HTSUS also may be included in this scope if they meet the physical description of subject merchandise above. Although the HTSUS subheadings are provided for convenience and customs purposes, the written description of the scope of these proceedings is dispositive.

[FR Doc. 2018–10879 Filed 5–18–18; 8:45 am]

**BILLING CODE 3510–DS–P**

## DEPARTMENT OF COMMERCE

**International Trade Administration**

**[C–475–837; C–489–832]**

**Carbon and Alloy Steel Wire Rod From Italy and the Republic of Turkey: Amended Final Affirmative Countervailing Duty Determination for the Republic of Turkey and Countervailing Duty Orders for Italy and the Republic of Turkey**

**AGENCY:** Enforcement and Compliance, International Trade Administration, Department of Commerce.

**SUMMARY:** Based on affirmative final determinations by the Department of Commerce (Commerce) and the International Trade Commission (ITC), Commerce is issuing the countervailing duty (CVD) orders on carbon and alloy steel wire rod (wire rod) from Italy and the Republic of Turkey (Turkey). Also, as explained in this notice, Commerce is amending its final affirmative determination with respect to Turkey to correct the rates assigned to Habas Sinai Ve Tibbi Gazlar Istih (Habas) and All-Others.

**DATES:** Applicable May 21, 2018.

**FOR FURTHER INFORMATION CONTACT:** Yasmin Bordas at (202) 482–3813 (Italy), Justin Neuman at (202) 482–0486 (Turkey), or Omar Qureshi at (202) 482–5307 (Turkey), AD/CVD Operations, Enforcement and Compliance, International Trade Administration, U.S. Department of Commerce, 1401 Constitution Avenue NW, Washington, DC 20230.

**SUPPLEMENTARY INFORMATION:**

**Background**

In accordance with sections 705(a), 705(d), and 777(i) of the Tariff Act of 1930, as amended (Act), and 19 CFR 351.210(c), on March 28, 2018, Commerce published its affirmative final determinations that countervailable subsidies are being provided to producers and exporters of wire rod from Italy and Turkey.[1]

On March 27, 2018, Ferriere Nord S.p.A. alleged that Commerce made ministerial errors in the *Wire Rod from Italy Final Determination* with regard to

Commerce's calculation of the final *ad valorem* subsidy rate pertaining to Ferriere Nord S.p.A.[2] One of the petitioners, Nucor Corporation (Nucor), filed rebuttal comments regarding Ferriere Nord S.p.A.'s allegation on April 2, 2018.[3]

Also on March 27, 2018, Nucor alleged that Commerce made a ministerial error in the *Wire Rod from Turkey Final Determination*.[4] In addition, on that same date, the Government of Turkey (GOT) alleged that Commerce made a ministerial error in the *Wire Rod from Turkey Final Determination*.[5] Nucor filed rebuttal comments regarding the GOT's allegation on April 2, 2018.[6]

We reviewed the allegations and determined that we did not make ministerial errors, within the meaning of section 705(e) of the Act and 19 CFR 351.224(f), with respect to the *Wire Rod from Italy Final Determination*; however, we did make a ministerial error in the *Wire Rod from Turkey Final Determination*. *See* "Amendment to the Final Determination" section below for further discussion.

On May 11, 2018, the ITC notified Commerce of its affirmative determination that an industry in the United States is materially injured within the meaning of section 705(b)(1)(A)(i) and 705(d) of the Act, by reason of subsidized imports of subject merchandise from Italy and Turkey, and its determination that critical circumstances do not exist with respect to imports of wire rod from Turkey that are subject to Commerce's affirmative critical circumstances finding.[7]

---

[1] *See Countervailing Duty Investigation of Carbon and Alloy Steel Wire Rod from Italy: Final Affirmative Determination,* 83 FR 13242 (March 28, 2018) (*Wire Rod from Italy Final Determination*) and the accompanying Issues and Decision Memorandum; *Carbon and Alloy Steel Wire Rod from the Republic of Turkey: Final Affirmative Countervailing Duty Determination, and Final Affirmative Critical Circumstances Determination, in Part,* 83 FR 13239 (March 28, 2018) (*Wire Rod from Turkey Final Determination*) and the accompanying Issues and Decision Memorandum.

[2] *See* Letter from Ferriere Nord, S.p.A., "Countervailing Duty Investigation of Carbon and Alloy Steel Wire Rod from Italy: Ferriere Nord Request to Correct Ministerial Errors in the Final Determination," dated March 27, 2018.

[3] *See* Letter from Nucor, "Carbon and Alloy Steel Wire Rod from the Republic of Italy: Rebuttal Ministerial Error Comments," dated April 2, 2018.

[4] *See* Letter from Nucor, "Carbon and Alloy Steel Wire Rod from the Republic of Turkey: Ministerial Error Allegation," dated March 27, 2018 (Nucor Ministerial Error Allegation).

[5] *See* Letter from the GOT, "Request of Government of Turkey for Correction of Ministerial Error on Final Determination in CVD Proceeding on Carbon and Alloy Steel Wire Rod from the Republic of Turkey," dated March 27, 2018 (GOT Ministerial Error Allegation).

[6] *See* Letter from Nucor, "Carbon and Alloy Steel Wire Rod from the Republic of Turkey: Rebuttal Ministerial Error Comments," dated April 2, 2018 (Nucor Rebuttal Comments).

[7] *See* Letters to Gary Taverman, Acting Assistant Secretary of Commerce for Enforcement and Compliance, from Rhonda K. Schmidtlein, Chairman of the U.S. International Trade Commission, regarding carbon and alloy steel wire rod from Italy and the Republic of Turkey (May 11, 2018) (ITC Letter).

**MESSAGE NO.**

**MESSAGE DATE**

**STATUS**

**INACTIVATED DATE**

**TYPE**

**FR CITE**

**SUB-TYPE**

**FR DATE**

**CATEGORY ACCESS**

**EFFECTIVE DATE**

**TYPE**          Public          Non-Public

**POI/POR DATE**          -

**Notice of lifting
of Suspension Date**

**PERIOD COVERED**          -

**SHORT CASE NAME**

**COURT CASE #s**

**REF MESSAGE #s**

**PRINCIPAL CASE #s**

**3rd Country CASE #s**

**RE:**

1.  On 05/21/2018, Commerce published in the Federal Register its antidumping duty order on carbon and alloy steel wire rod (wire rod) from the Republic of Korea (Korea) (83 FR 23417).

2.  The merchandise covered by this order is certain hot-rolled products of carbon steel and alloy steel, in coils, of approximately round cross section, less than 19.00 mm in actual solid cross-sectional diameter.  Specifically excluded are steel products possessing the above-noted physical characteristics and meeting the Harmonized Tariff Schedule of the United States (HTSUS) definitions for (a) stainless steel; (b) tool steel; (c) high-nickel steel; (d) ball bearing steel; or (e) concrete reinforcing bars and rods.  Also excluded are free cutting steel (also known as free machining steel) products (i.e., products that contain by weight one or more of the following elements: 0.1 percent or more of lead, 0.05 percent or more of bismuth, 0.08 percent or more of sulfur, more than 0.04 percent of phosphorous, more than 0.05 percent of selenium, or more than 0.01 percent of tellurium).  All products meeting the physical description of subject merchandise that are not specifically excluded are included in this scope.

The products under this order are currently classifiable under subheadings 7213.91.3011, 7213.91.3015, 7213.91.3020, 7213.91.3093; 7213.91.4500, 7213.91.6000, 7213.99.0030, 7227.20.0030, 7227.20.0080, 7227.90.6010, 7227.90.6020, 7227.90.6030, and 7227.90.6035 of the HTSUS.  Products entered under subheadings 7213.99.0090 and 7227.90.6090 of the HTSUS also may be included in this scope if they meet the physical description of subject merchandise above.  Although the HTSUS subheadings are provided for convenience and customs purposes, the written description of the scope of these proceedings is dispositive.

3.  For imports of wire rod from Korea, CBP shall suspend liquidation of entries of subject merchandise entered, or withdrawn from warehouse, for consumption on or after 05/17/2018 (date of publication of the International Trade Commission final determination in the Federal Register).  Effective 05/17/2018, CBP shall require a cash deposit equal to the percentages identified below.

Producer and/or Exporter: All-Others
Case Number:  A-580-891-000
Cash Deposit Rate:  41.10 percent

Producer and/or Exporter: POSCO
Case Number:  A-580-891-001
Cash Deposit Rate:  41.10 percent

4.  If there are any questions by the importing public regarding this message, please contact the Call Center for the Office of AD/CVD Operations, Enforcement and Compliance, International Trade Administration, U.S. Department of Commerce at (202) 482-0984.  CBP ports should submit their inquiries through authorized CBP channels only.  (This message was generated by OVII: LW)

5.  There are no restrictions on the release of this information.

Alexander Amdur

**Attachment 2**

***Carbon and Alloy Steel Wire Rod From the Republic of Korea and the United Kingdom: Notice of Final Results of Antidumping Duty Changed Circumstances Review*, 84 Fed. Reg. 13,888 (Dep't Commerce Apr. 8, 2019) and CBP Message No. 9113302 (Apr. 23, 2019)**

Dated: April 1, 2019.

**Gary Taverman,**

*Deputy Assistant Secretary for Antidumping and Countervailing Duty Operations, performing the non-exclusive functions and duties of the Assistant Secretary for Enforcement and Compliance.*

## Appendix I

### Scope of the Investigation

The scope of the investigation covers aluminum wire and cable, which is defined as an assembly of one or more electrical conductors made from 8000 Series Aluminum Alloys (defined in accordance with ASTM B800), Aluminum Alloy 1350 (defined in accordance with ASTM B230/B230M or B609/B609M), and/or Aluminum Alloy 6201 (defined in accordance with ASTM B398/B398M), provided that: (1) At least one of the electrical conductors is insulated; (2) each insulated electrical conductor has a voltage rating greater than 80 volts and not exceeding 1000 volts; and (3) at least one electrical conductor is stranded and has a size not less than 16.5 thousand circular mil (kcmil) and not greater than 1000 kcmil. The assembly may: (1) Include a grounding or neutral conductor; (2) be clad with aluminum, steel, or other base metal; or (3) include a steel support center wire, one or more connectors, a tape shield, a jacket or other covering, and/or filler materials.

Most aluminum wire and cable products conform to National Electrical Code (NEC) types THHN, THWN, THWN–2, XHHW–2, USE, USE–2, RHH, RHW, or RHW–2, and also conform to Underwriters Laboratories (UL) standards UL–44, UL–83, UL–758, UL–854, UL–1063, UL–1277, UL–1569, UL–1581, or UL–4703, but such conformity is not required for the merchandise to be included within the scope.

The scope of the investigation specifically excludes aluminum wire and cable products in lengths less than six feet, whether or not included in equipment already assembled at the time of importation.

The merchandise covered by the investigation is currently classifiable under subheading 8544.49.9000 of the Harmonized Tariff Schedule of the United States (HTSUS). Products subject to the scope may also enter under HTSUS subheading 8544.42.9090. The HTSUS subheadings are provided for convenience and customs purposes. The written description of the scope of the investigation is dispositive.

## Appendix II

### List of Topics Discussed in the Preliminary Decision Memorandum

I. Summary
II. Background
III. Scope Comments
IV. Scope of the Investigation
V. Injury Test
VI. Alignment
VII. Application of the CVD Law to Imports from China
VIII. Diversification of China's Economy
IX. Subsidies Valuation
X. Benchmarks and Interest Rates
XI. Use of Facts Otherwise Available and Adverse Inferences
XII. Analysis of Programs
XIII. Calculation of the All-Others Rate
XIV. ITC Notification
XV. Verification
XVI. Disclosure and Public Comment
XVII. Conclusion

[FR Doc. 2019–06856 Filed 4–5–19; 8:45 am]

**BILLING CODE 3510–DS–P**

---

## DEPARTMENT OF COMMERCE

### International Trade Administration

[A–580–891; A–412–826]

### Carbon and Alloy Steel Wire Rod From the Republic of Korea and the United Kingdom: Notice of Final Results of Antidumping Duty Changed Circumstances Review

**AGENCY:** Enforcement and Compliance, International Trade Administration, Department of Commerce.

**SUMMARY:** The Department of Commerce (Commerce) is revoking, in part, the antidumping duty (AD) orders on carbon and alloy steel wire rod (wire rod) from the Republic of Korea (Korea) and the United Kingdom as to grade 1078 and higher tire cord wire rod.

**DATES:** Applicable May 21, 2018.

**FOR FURTHER INFORMATION CONTACT:** Alice Maldonado or Jacob Garten, AD/CVD Operations, Office II, Enforcement and Compliance, International Trade Administration, U.S. Department of Commerce, 1401 Constitution Avenue NW, Washington, DC 20230; telephone 202–482–4682 or 202–482–4633.

**SUPPLEMENTARY INFORMATION:**

### Background

On May 21, 2018, Commerce published the AD orders on wire rod from Korea and the United Kingdom.[1] On September 17, 2018, six members of the domestic industry, including the petitioners from the underlying investigations (Nucor Corporation, Optimus Steel LLC (formerly, Gerdau Ameristeel US Inc), Keystone Consolidates Industries, Inc., and Charter Steel) requested that Commerce initiate a changed circumstances review (CCR) to revoke, in part, the AD orders on wire rod from Korea and the United Kingdom as to grade 1078 and higher tire cord wire rod effective May 21, 2018.[2]

On November 7, 2018, Commerce initiated this CCR and published the notice of preliminary results, determining that the producers accounting for substantially all of the production of the domestic like product to which the *Orders* pertain lacked interest in the relief provided by the *Orders* with respect to grade 1078 and higher tire cord wire rod.[3] On December 21, 2018, Commerce solicited interested party comments on the appropriateness of end-use certifications as a condition of entry and solicited input from U.S. Customs and Border Protection (CBP).[4] The parties to these proceedings submitted comments on January 29, 2019, and February 19, 2019.[5] Subsequently, on March 20, 2019, we placed CBP's input on the records of these proceedings.[6] On March 25 and 27, 2019, the parties to these proceedings submitted timely comments regarding CBP's input on end-use certifications.[7]

---

[1] See *Carbon and Alloy Steel Wire Rod from Italy, the Republic of Korea, Spain, the Republic of Turkey, and the United Kingdom: Antidumping Duty Orders and Amended Final Affirmative Antidumping Duty Determinations for Spain and the Republic of Turkey*, 83 FR 23417 (May 21, 2018) (*Orders*).

[2] See letter from domestic industry re: "Carbon and Alloy Steel Wire Rod from the Republic of Korea and the United Kingdom: Petitioners' Request for Changed Circumstances Review and Partial Revocation Request," dated September 17, 2018.

[3] See *Carbon and Alloy Steel Wire Rod from the Republic of Korea and the United Kingdom: Initiation and Expedited Preliminary Results of Antidumping Duty Changed Circumstances Review*, 83 FR 55694 (November 7, 2018) (*Initiation and Preliminary Results*).

[4] See Commerce Letter, "Re: Antidumping Duty Changed Circumstances Reviews of Carbon and Alloy Steel Wire Rod from the Republic of Korea (Korea) and the United Kingdom," dated December 21, 2018 (December 21, 2018, Solicitation of Comments Letter).

[5] See letter from Bekaert Corporation, Kiswire America Inc., Kiswire Inc., Kiswire Pine Bluff, and Tokusen U.S.A., Inc. re: "Carbon and Alloy Steel Wire Rod from the Republic of Korea and the United Kingdom, Changed Circumstances Reviews: Response to Request for Comments," dated January 29, 2019; and letter from Nucor Corporation, Optimus Steel LLC, Keystone Consolidates Industries, Inc., and Charter Steel re: "Carbon and Alloy Steel Wire Rod from the Republic of Korea and the United Kingdom: Comments on End-Use Certifications," dated February 19, 2019.

[6] See Memorandum to the file from Wendy J. Frankel, Director, Customs Liaison Unit, entitled, "Changed Circumstances Reviews of Carbon and Alloy Steel Wire Rod from the Republic of Korea and the United Kingdom: Discussion with U.S. Customs and Border Protection," dated March 20, 2019.

[7] See letter from Bekaert Corporation, Kiswire America Inc., Kiswire Inc., Kiswire Pine Bluff, and Tokusen U.S.A., Inc. re: "Carbon and Alloy Steel Wire Rod from the Republic of Korea and the United Kingdom, Changed Circumstances Reviews: Response to Request for Comments," dated March 25, 2019 (Interested Party Importer letter); letter from Nucor Corporation re: "Carbon and Alloy Steel Wire Rod from the Republic of Korea and the United Kingdom: Comments CBP's Recommendations Concerning End-Use Certifications," dated March 27, 2019 (Nucor Letter); and letter from Optimus Steel LLC, Keystone Consolidates Industries, Inc., and Charter Steel re: "Carbon and Alloy Steel Wire Rod from the Republic of Korea and the United Kingdom: Comments on Input from CBP Regarding End-Use Certifications," dated March 27, 2019 (Domestic Interested Party Letter).

Commerce exercised its discretion to toll all deadlines affected by the partial federal government closure from December 22, 2018, through the resumption of operations on January 29, 2019. If the new deadline falls on a non-business day, in accordance with Commerce's practice, the deadline will become the next business day. Accordingly, the revised deadline for the final results of this changed circumstances review is now September 9, 2019.

## Final Results of Changed Circumstances Review

For the reasons stated in the *Initiation and Preliminary Results,* and because we received no comments from interested parties to the contrary, Commerce continues to determine that producers accounting for substantially all of the production of the domestic like product have no further interest in the *Orders* with respect to grade 1078 and higher tire cord wire rod. As a result of this determination and pursuant to section 751(d)(1) of the Tariff Act of 1930, as amended (the Act) and 19 CFR 351.222(g), we are revoking, in part, the *Orders* as they relate to imports of grade 1078 and higher tire cord wire rod.

Regarding the requirement of end-use certifications as a condition of entry for the exclusion of tire cord wire rod of grade 1078 and higher from the AD order, we solicited comments from interested parties and input from CBP on the administrability of such certifications for consideration for the final results of these proceedings.[8] In their comments, the parties, who account for all of the interested parties to these proceedings, agree that end-use certifications for tire cord wire rod need not be filed as "a condition" of entry but must be required at the time of filing the Entry Summary for tire cord wire rod to be exempt from AD duties.[9]

Consequently, we are changing the scope of the orders on wire rod from Korea and the United Kingdom by adding exclusion language related to grade 1078 and higher tire cord quality wire rod and requiring that a certification of end-use be filed with CBP at the time of the filing of the Entry Summary with CBP as provided in the Attachment to this notice. Further, importers of record of tire cord wire rod are required to maintain a copy of the end-use certifications that were filed

with the entry summaries to provide at the request of CBP or Commerce.

## Amended Scope of the Orders

The products covered by these orders are certain hot-rolled products of carbon steel and alloy steel, in coils, of approximately round cross section, less than 19.00 mm in actual solid cross-sectional diameter. Specifically excluded are steel products possessing the above-noted physical characteristics and meeting the Harmonized Tariff Schedule of the United States (HTSUS) definitions for (a) stainless steel; (b) tool steel; (c) high-nickel steel; (d) ball bearing steel; or (e) concrete reinforcing bars and rods. Also excluded are free cutting steel (also known as free machining steel) products (*i.e.,* products that contain by weight one or more of the following elements: 0.1 percent or more of lead, 0.05 percent or more of bismuth, 0.08 percent or more of sulfur, more than 0.04 percent of phosphorous, more than 0.05 percent of selenium, or more than 0.01 percent of tellurium). All products meeting the physical description of subject merchandise that are not specifically excluded are included in this scope.

Excluded from the scope of the antidumping duty orders from Korea and the United Kingdom are grade 1078 and higher tire cord quality wire rod to be used in the production of tire cord wire. Grade 1078 and higher tire cord quality wire rod refers to wire rod with not less than 0.78 percent of carbon and includes but is not limited to other high carbon grades of wire rod such as Grade 1078, 1080, 1085, 1086, 1090, and 1092.

Grade 1078 and higher tire cord quality wire rod is defined as: (i) Grade 1078 and higher tire cord quality wire rod measuring not more than 6.0 mm in cross-sectional diameter; (ii) with an average partial decarburization of no more than 70 microns in depth (maximum individual 200 microns); (iii) having no nondeformable inclusions greater than 20 microns and no deformable inclusions greater than 35 microns; (iv) having a carbon segregation per heat average of 3.0 or better; (v) having a surface quality with no surface defects of a length greater than 0.15 mm; (vi) capable of being drawn to a diameter of 0.405 mm or less, and (vii) containing by weight the following elements in the proportions shown: (1) 0.78 percent or more of carbon, (2) less than 0.01 percent of aluminum, (3) 0.040 percent or less, in the aggregate, of phosphorus and sulfur, (4) 0.006 percent or less of nitrogen, (5) not more than 0.6 percent silicon; and (6) not more than 0.55 percent in the aggregate, of copper, nickel, and

chromium. For purposes of the grade 1078 and higher tire cord quality wire rod, an inclusion will be considered to be deformable if its ratio of length (measured along the axis-that is, the direction of rolling-of the rod) over thickness (measured on the same inclusion in a direction perpendicular to the axis of the rod) is equal to or greater than three. The size of an inclusion for purposes of the 20 microns and 35 microns limitations is the measurement of the largest dimension observed on a longitudinal section measured in a direction perpendicular to the axis of the rod.

The designation of the products as "tire cord quality" indicates the acceptability of the product for use in the production of tire cord applications which require that the tire cord wire rod be drawn into wire with a diameter of 0.405 mm or less. These quality designations are presumed to indicate that these products are being used in tire cord applications, and such merchandise intended for the tire cord applications is not included in the scope. Importers of tire cord quality wire rod are required to file with CBP, at the time of the Entry Summary filing with CBP, a certification of end use that certifies that the Grade 1078 and above tire cord quality wire rod will be used only in the production of tire cord wire. In instances where the importer of record is not the end-user, the importer must provide written notice of the end-use requirement and an official of the end user must also sign a copy of the certification filed with CBP at the time of Entry Summary. Importers of record of tire cord wire rod are required to maintain a copy of the end-use certifications that were filed with the entry summaries with the CBP and to provide them at the request of CBP or Commerce.

The products under these orders are currently classifiable under subheadings 7213.91.3011, 7213.91.3015, 7213.91.3020, 7213.91.3093; 7213.91.4500, 7213.91.6000, 7213.99.0030, 7227.20.0030, 7227.20.0080, 7227.90.6010, 7227.90.6020, 7227.90.6030, and 7227.90.6035 of the HTSUS. Products entered under subheadings 7213.99.0090 and 7227.90.6090 of the HTSUS also may be included in this scope if they meet the physical description of subject merchandise above. Although the HTSUS subheadings are provided for convenience and customs purposes, the written description of the scope of these orders is dispositive.

[8] *See* December 21, 2018, Solicitation of Comments Letter.

[9] *See* Interested Party Importer letter; Nucor Letter; and Domestic Interested Party Letter.

## Instructions to CBP

Because we determine that there are changed circumstances that warrant the revocation of the *Orders,* in part, we will instruct CBP to liquidate without regard to antidumping duties, all unliquidated entries of merchandise covered by this partial revocation that were entered, or withdrawn from warehouse, on or after May 21, 2018, for which an end-use certification was filed with CBP at the time of entry summary, and to refund all AD cash deposits on all such merchandise, with applicable interest.

We are issuing and publishing these final results and revocation, in part, and notice in accordance with sections 751(b) and 777(i) of the Act and 19 CFR 351.216, 19 CFR 351.221(c)(3), and 19 CFR 351.222.

Dated: April 3, 2019.

**Gary Taverman,**

*Deputy Assistant Secretary for Antidumping and Countervailing Duty Operations, performing the non-exclusive functions and duties of the Assistant Secretary for Enforcement and Compliance.*

## Attachment

### End Use Certification

I hereby certify that:

• My name is {INSERT COMPANY OFFICIAL'S NAME HERE} and I am an official of (INSERT NAME OF IMPORTING COMPANY;

• I have direct personal knowledge of the facts regarding the importation of the (INSERT GRADE) tire cord wire rod produced in {INSERT COUNTRY} that entered under entry number(s) (INSERT ENTRY NUMBER(S)} and are covered by this certification;

• I have personal knowledge of the facts regarding the production of the imported products covered by this certification;

• I have personal knowledge of the facts regarding the end-use of the imported products covered by this certification because (initial one):

• ____m my company is the end-user of the imported product covered by this certification, Or

____m my company is not the end-user of the imported products covered by this certification, but I have contacted the end-user and advised them in writing of the end-use requirements for the imported product and an official of the end-user has signed a copy of this certification;

• This tire cord wire rod shall be used for tire cord applications, which require that the tire cord wire rod be drawn into wire with a diameter of 0.405 mm or less;

• This tire cord wire rod will not be drawn into wire with a diameter greater than 0.405 mm;

• I understand that (INSERT NAME OF IMPORTING COMPANY} is required to maintain a copy of this certification (including a copy signed by an end-user that is not the importer) and sufficient documentation supporting this certification for the later of (1) a period of five years from the date of entry or (2) a period of three years after the conclusion of any litigation in the United States courts regarding such entries;

• I understand that (INSERT NAME OF IMPORTING COMPANY} is required to provide this certification and supporting records, upon entry, to U.S. Customs and Border Protection (CBP);

• I understand that the claims made herein, and the substantiating documentation, are subject to verification by CBP and/or the U.S. Department of Commerce (Commerce);

• I understand that failure to maintain the required certification and/ or failure to substantiate the claims made herein will result in:

○ Suspension of liquidation of all unliquidated entries (and entries for which liquidation has not become final) for which these requirements were not met; and

○ the requirement that the importer post applicable antidumping duty (AD) cash deposits equal to the rates as determined by Commerce;

• I understand that agents of the importer, such as brokers, are not permitted to make this certification;

• This certification was completed at the time of entry;

• I am aware that U.S. law (including, but not limited to, 18 U.S.C. 1001) imposes criminal sanctions on individuals who knowingly and willfully make material false statements to the U.S. government.

IMPORTER SIGNATURE

NAME OF COMPANY OFFICIAL _____

TITLE _____

DATE _____

END-USER SIGNATURE (if other than importer)

NAME OF COMPANY OFFICIAL _____

TITLE _____

COMPANY NAME _____

DATE _____

[FR Doc. 2019–06857 Filed 4–5–19; 8:45 am]

**BILLING CODE 3510–DS–P**

## DEPARTMENT OF COMMERCE

### National Oceanic and Atmospheric Administration

**RIN 0648–XG937**

### New England Fishery Management Council; Public Meeting

**AGENCY:** National Marine Fisheries Service (NMFS), National Oceanic and Atmospheric Administration (NOAA), Commerce.

**ACTION:** Notice; public meeting.

**SUMMARY:** The New England Fishery Management Council (Council) is scheduling a public meeting of its Skate Advisory Panel to consider actions affecting New England fisheries in the exclusive economic zone (EEZ). Recommendations from this group will be brought to the full Council for formal consideration and action, if appropriate.

**DATES:** This meeting will be held on Tuesday, April 23, 2019 at 9 a.m.

**ADDRESSES:** The meeting will be held at the Fairfield Inn & Suites, 185 MacArthur Drive, New Bedford, MA 02740; telephone: (774) 634–2000.

*Council address:* New England Fishery Management Council, 50 Water Street, Mill 2, Newburyport, MA 01950.

**FOR FURTHER INFORMATION CONTACT:** Thomas A. Nies, Executive Director, New England Fishery Management Council; telephone: (978) 465–0492.

**SUPPLEMENTARY INFORMATION:**

The Advisory Panel will review Plan Development Team (PDT) analyses to date, discuss the need for limited access in the skate fishery and provide guidance to the PDT for future analyses regarding qualification criteria and draft preliminary objectives/purpose and need, if needed. The Panel will receive an update on progress and potential timelines for 2019 skate priorities. Other business will be discussed as necessary.

Although non-emergency issues not contained on this agenda may come before this Council for discussion, those issues may not be the subject of formal action during this meeting. Council action will be restricted to those issues specifically listed in this notice and any issues arising after publication of this notice that require emergency action under section 305(c) of the Magnuson-Stevens Act, provided the public has been notified of the Council's intent to take final action to address the emergency.

### Special Accommodations

This meeting is physically accessible to people with disabilities. This meeting will be recorded. Consistent with 16

MESSAGE NO:          9113302          MESSAGE DATE:    04/23/2019

MESSAGE STATUS:   Active          CATEGORY:          Antidumping
TYPE:                       LIQ-Liquidation   PUBLIC   ☑    NON-PUBLIC   ☐
SUB-TYPE:              REV-Revocation

FR CITE:                 84 FR 13888   FR CITE DATE:    04/08/2019

REFERENCE
MESSAGE #
(s):

CASE #(s):              A-580-891

EFFECTIVE DATE:    05/21/2018   COURT CASE #:

PERIOD OF REVIEW:                  TO

PERIOD COVERED:                    TO

Notice of Lifting of Suspension Date: 04/08/2019

TO:      { Directors Of Field Operations, Port Directors }

FROM:  { Director AD/CVD & Revenue Policy & Programs }

RE:      Revocation of antidumping duty order, in part, on carbon and alloy steel wire rod from the Republic of Korea (A-580-891)

1.  As a result of a notification from the petitioners that they are no longer interested in grade 1078 and higher tire cord quality wire rod subject to the antidumping duty order on carbon and alloy steel wire rod (wire rod) from the Republic of Korea, Commerce has revoked the antidumping duty order in part with respect to grade 1078 and higher tire cord quality wire rod and published the revocation in the Federal Register on 04/08/2019 (84 FR 13888).

2. The products covered by this order are certain hot-rolled products of carbon steel and alloy steel, in coils, of approximately round cross section, less than 19.00 mm in actual solid cross-sectional diameter.  Specifically excluded are steel products possessing the above-noted physical characteristics and meeting the Harmonized Tariff Schedule of the United States (HTSUS) definitions for (a) stainless steel; (b) tool steel; (c) high-nickel steel; (d) ball bearing steel; or (e) concrete reinforcing bars and rods.  Also excluded are free cutting steel (also known as free machining steel) products (i.e., products that contain by weight one or more of the following elements:  0.1 percent or more of lead, 0.05 percent or more of bismuth, 0.08 percent or more of sulfur, more than 0.04 percent of phosphorous, more than 0.05 percent of selenium, or more than 0.01 percent of tellurium).  All products meeting the physical description of subject merchandise that are not specifically excluded are included in this scope.

Excluded from the scope of this antidumping duty order are grade 1078 and higher tire cord quality wire rod to be used in the production of tire cord wire.  Grade 1078 and higher tire cord quality wire rod refers to wire rod with not less than 0.78 percent of carbon and includes but is not limited to other high carbon grades of wire rod such as Grade 1078, 1080, 1085, 1086, 1090, and 1092.

Grade 1078 and higher tire cord quality rod is defined as:  (i) Grade 1078 and higher tire cord quality wire rod measuring not more than 6.0 mm in cross-sectional diameter; (ii) with an average partial decarburization of no more than 70 microns in depth (maximum individual 200 microns); (iii) having no nondeformable inclusions greater than 20 microns and no deformable inclusions greater than 35 microns; (iv) having a carbon segregation per heat average of 3.0 or better; (v) having a surface quality with no surface defects of a length greater than 0.15 mm; (vi) capable of being

drawn to a diameter of 0.405 mm or less, and (vii) containing by weight the following elements in the proportions shown: (1) 0.78 percent or more of carbon, (2) less than 0.01 percent of aluminum, (3) 0.040 percent or less, in the aggregate, of phosphorus and sulfur, (4) 0.006 percent or less of nitrogen, (5) not more than 0.6 percent silicon; and (6) not more than 0.55 percent in the aggregate, of copper, nickel, and chromium. For purposes of the grade 1078 and higher tire cord quality wire rod, an inclusion will be considered to be deformable if its ratio of length (measured along the axis-that is, the direction of rolling-of the rod) over thickness (measured on the same inclusion in a direction perpendicular to the axis of the rod) is equal to or greater than three. The size of an inclusion for purposes of the 20 microns and 35 microns limitations is the measurement of the largest dimension observed on a longitudinal section measured in a direction perpendicular to the axis of the rod.

The designation of the products as "tire cord quality" indicates the acceptability of the product for use in the production of tire cord applications which require that the tire cord wire rod be drawn into wire with a diameter of 0.405 mm or less. These quality designations are presumed to indicate that these products are being used in tire cord applications, and such merchandise intended for the tire cord applications is not included in the scope. Importers of tire cord quality wire rod are required to file, at the time of the Entry Summary filing, a certification of end use that certifies that the Grade 1078 and above tire cord quality wire rod will be used only in the production of tire cord wire. In instances where the importer of record is not the end-user, the importer must provide written notice of the end-use requirement and an official of the end user must also sign a copy of the certification filed with CBP at the time of Entry Summary. Importers of record of tire cord wire rod are required to maintain a copy of the end-use certifications that were filed with the entry summaries to provide at the request of CBP or Commerce.

The products under this order are currently classifiable under subheadings 7213.91.3011, 7213.91.3015, 7213.91.3020, 7213.91.3093; 7213.91.4500, 7213.91.6000, 7213.99.0030, 7227.20.0030, 7227.20.0080, 7227.90.6010, 7227.90.6020, 7227.90.6030, and 7227.90.6035 of the HTSUS. Products entered under subheadings 7213.99.0090 and 7227.90.6090 of the HTSUS also may be included in this scope if they meet the physical description of subject merchandise above. Although the HTSUS subheadings are provided for convenience and customs purposes, the written description of the scope of this order is dispositive.

3. Therefore, CBP is directed to terminate the suspension of liquidation for all shipments of grade 1078 and higher tire cord quality wire rod entered, or withdrawn from warehouse, for consumption on or after 5/21/2018, for which an end-use certification was filed with CBP at the time of entry summary. All entries of the revoked product that were suspended on or after 5/21/2018 should be liquidated without regard to antidumping duties (i.e., refund all cash deposits).

4.  Notice of the lifting of suspension of liquidation of entries of subject merchandise which are covered by paragraph 2 and entered, or withdrawn from warehouse, for consumption on or after 5/21/2018 occurred with the publication of the notice of revocation in the Federal Register (84 FR 13888, 04/08/2019).

5.  The assessment of antidumping duties by CBP on shipments or entries of this merchandise is subject to the provisions of section 778 of the Tariff Act of 1930, as amended.  Section 778 requires that CBP pay interest on overpayments or assess interest on underpayments of the required amounts deposited as estimated antidumping duties.  The interest provisions are not applicable to cash or bonds posted as estimated antidumping duties before the date of publication of the antidumping duty order.  Interest shall be calculated from the date payment of estimated antidumping duties is required through the date of liquidation.  The rate at which such interest is payable is the rate in effect under section 6621 of the Internal Revenue Code of 1954 for such period.

6.  If there are any questions by the importing public regarding this message, please contact the Call Center for the Office of AD/CVD Operations, Enforcement and Compliance, International Trade Administration, U.S. Department of Commerce at (202) 482-0984.  CBP ports should submit their inquiries through authorized CBP channels only.  (This message was generated by OII:AM.)

7.  There are no restrictions on the release of this information.

Alexander Amdur

Company Details

*Party Indicator Value:

I = Importer, M = Manufacturer, E = Exporter, S = Sold To Party

**Attachment 3**

**Entry Summary Query Responses Showing Post Summary
Correction Filing on December 17, 2019 and Entry
Summary Query Responses from January 2022 for Entry
Nos. DQ7-0222001-2 and DQ7-0221433-8**

**This attachment is not susceptible to public summarization.**

**Attachment 4**

**End Use Certifications and Mill Test Certificates for Entries
Subject to Appeal Demonstrating Product Entered Was
Grade 1078 and Higher Tire Cord Quality Wire Rod**

**This attachment is not susceptible to public summarization.**

**Attachment 5**

**Screenshots from U.S. Customs and Border Protection's Official Notice of Extension, Suspension, and Liquidation Website**



(http://www.cbp.gov/)

**OFFICIAL NOTICE OF EXTENSION, SUSPENSION AND LIQUIDATION**

## Field Search

**Entry Number** &#9432;

> DQ7-0221459-3

**Filer** &#9432;

**Importer of Record** &#9432;

**Surety Code**

**Port of Entry**

> --Select Port of Entry--

**Liquidation Date**

> |  | to |  |

**Posted Date**

> |  | to |  |

**Entry Date**

> |  | to |  |

**Voided Date**

> |  | to |  |

**Event Type**

> --Select Event Type--

**Entry Type**

> --Select Entry Type--

**Basis**

> --Select Basis--

**Action**

> --Select Action--

[ Search ]   [ Reset ]

Showing 1 to 1 of 1 records

| Posted Date | Liquidation Date | Voided Date | Event Type | Basis | Action | Entry Number | Port of Entry | Entry Date | Entry Type | Team |
|---|---|---|---|---|---|---|---|---|---|---|
| 07/01/2022 | 10/08/2019 | | Liquidated | Deemed Liquidation | No Change | DQ702214593 | 2002 | 09/11/2018 | 21 | EBC |

Show 25 records

Previous 1 Next

Accessibility (http://www.cbp.gov/site-policy-notices/accessibility/)       DHS.gov (http://www.dhs.gov/)


(http://www.cbp.gov/)

OFFICIAL NOTICE OF EXTENSION, SUSPENSION AND LIQUIDATION

## Field Search

**Entry Number** ⓘ

> DQ7-0221433-8

**Filer** ⓘ

**Importer of Record** ⓘ

**Surety Code**

**Port of Entry**

> --Select Port of Entry--

**Liquidation Date**

> |  | to |  |

**Posted Date**

> |  | to |  |

**Entry Date**

> |  | to |  |

**Voided Date**

> |  | to |  |

**Event Type**

> --Select Event Type--

**Entry Type**

> --Select Entry Type--

**Basis**

> --Select Basis--

**Action**

> --Select Action--

[ Search ]   [ Reset ]

Showing 1 to 1 of 1 records

| Posted Date | Liquidation Date | Voided Date | Event Type | Basis | Action | Entry Number | Port of Entry | Entry Date | Entry Type | Team |
|---|---|---|---|---|---|---|---|---|---|---|
| 06/03/2021 | | | Suspended | AD/CVD Suspend | | DQ702214338 | 2002 | 09/11/2018 | 38 | 055 |

Show [ 25 ] records

Previous | 1 | Next

Accessibility (http://www.cbp.gov/site-policy-notices/accessibility/)          DHS.gov (http://www.dhs.gov/)

9/28/22, 2:56 PM
Official Notice of Extension, Suspension and Liquidation - U.S. Customs and Border Protection
Case 1:22-cv-00285-N/A    Document 12    Filed 10/12/22    Page 45 of 105

# U.S. Customs and Border Protection
## Securing America's Borders

(http://www.cbp.gov/)

**OFFICIAL NOTICE OF EXTENSION, SUSPENSION AND LIQUIDATION**

## Field Search

**Entry Number**  ⓘ

DQ7-0221727-3

**Filer**  ⓘ

**Importer of Record**  ⓘ

**Surety Code**

**Port of Entry**

--Select Port of Entry--

**Liquidation Date**

| | to | |

**Posted Date**

| | to | |

**Entry Date**

| | to | |

**Voided Date**

| | to | |

**Event Type**

--Select Event Type--

**Entry Type**

--Select Entry Type--

**Basis**

--Select Basis--



**Action**

--Select Action--

[ Search ]  [ Reset ]

Showing 0 to 0 of 0 records

| Posted Date | Liquidation Date | Voided Date | Event Type | Basis | Action | Entry Number | Port of Entry | Entry Date | Entry Type | Team |
|---|---|---|---|---|---|---|---|---|---|---|

No records found

Accessibility (http://www.cbp.gov/site-policy-notices/accessibility/)   DHS.gov (http://www.dhs.gov/)


(http://www.cbp.gov/)

**OFFICIAL NOTICE OF EXTENSION, SUSPENSION AND LIQUIDATION**

## Field Search

**Entry Number**                                                                          ⓘ

> DQ7-0222001-2

**Filer**                                                                                 ⓘ

> 

**Importer of Record**                                                                    ⓘ

> 

**Surety Code**

> 

**Port of Entry**

> --Select Port of Entry--

**Liquidation Date**

> | to |

**Posted Date**

> | to |

**Entry Date**

> | to |

**Voided Date**

> | to |

**Event Type**

> --Select Event Type--

**Entry Type**

> --Select Entry Type--

**Basis**

> --Select Basis--

Case 1:22-cv-00285-N/A   Document 12   Filed 10/12/22   Page 48 of 105



**Action**

--Select Action--

| Search | Reset |

Showing 0 to 0 of 0 records

| Posted Date | Liquidation Date | Voided Date | Event Type | Basis | Action | Entry Number | Port of Entry | Entry Date | Entry Type | Team |
| --- | --- | --- | --- | --- | --- | --- | --- | --- | --- | --- |

No records found

**Accessibility (http://www.cbp.gov/site-policy-notices/accessibility/)   DHS.gov (http://www.dhs.gov)**


(http://www.cbp.gov/)

**OFFICIAL NOTICE OF EXTENSION, SUSPENSION AND LIQUIDATION**

---

## Field Search

**Entry Number**   ⓘ

| DQ7-0222045-9 |
|---|

**Filer**   ⓘ

| |
|---|

**Importer of Record**   ⓘ

| |
|---|

**Surety Code**

| |
|---|

**Port of Entry**

| --Select Port of Entry-- |
|---|

**Liquidation Date**

| | to | |
|---|---|---|

**Posted Date**

| | to | |
|---|---|---|

**Entry Date**

| | to | |
|---|---|---|

**Voided Date**

| | to | |
|---|---|---|

**Event Type**

| --Select Event Type-- |
|---|

**Entry Type**

| --Select Entry Type-- |
|---|

**Basis**

| --Select Basis-- |
|---|



**Action**

--Select Action--

Search    Reset

Showing 0 to 0 of 0 records

| Posted Date | Liquidation Date | Voided Date | Event Type | Basis | Action | Entry Number | Port of Entry | Entry Date | Entry Type | Team |
|---|---|---|---|---|---|---|---|---|---|---|

No records found

Accessibility (http://www.cbp.gov/site-policy-notices/accessibility/)   DHS.gov (http://www.dhs.gov)


(http://www.cbp.gov/)

OFFICIAL NOTICE OF EXTENSION, SUSPENSION AND LIQUIDATION

## Field Search

**Entry Number**    ⓘ

DQ7-0221316-5

**Filer**    ⓘ

**Importer of Record**    ⓘ

**Surety Code**

**Port of Entry**

--Select Port of Entry--

**Liquidation Date**

|  | to |  |

**Posted Date**

|  | to |  |

**Entry Date**

|  | to |  |

**Voided Date**

|  | to |  |

**Event Type**

--Select Event Type--

**Entry Type**

--Select Entry Type--

**Basis**

--Select Basis--

**Action**

--Select Action--

Search    Reset

Showing 1 to 1 of 1 records

Case 1:22-cv-00285-N/A   Document 12   Filed 10/12/22   Page 52 of 105

| Posted Date | Liquidation Date | Voided Date | Event Type | Basis | Action | Entry Number | Port of Entry | Entry Date | Entry Type | Team |
|---|---|---|---|---|---|---|---|---|---|---|
| 09/06/2022 | 09/24/2021 | | Liquidated | Deemed Liquidation | No Change | DQ702213165 | 2002 | 09/05/2018 | 21 | JBG |

Show 25 records

Previous | 1 | Next

Accessibility (http://www.cbp.gov/site-policy-notices/accessibility/)          DHS.gov (http://www.dhs.gov/)

Official Notice of Extension, Suspension and Liquidation - Customs and Border Protection



**U.S. Customs and Border Protection**
*Securing America's Borders*   (http://www.cbp.gov/)

OFFICIAL NOTICE OF EXTENSION, SUSPENSION AND LIQUIDATION

## Field Search

**Entry Number**   ⓘ

DQ7-0221382-7

**Filer**   ⓘ

**Importer of Record**   ⓘ

**Surety Code**

**Port of Entry**

--Select Port of Entry--

**Liquidation Date**

| | to | |

**Posted Date**

| | to | |

**Entry Date**

| | to | |

**Voided Date**

| | to | |

**Event Type**

--Select Event Type--

**Entry Type**

--Select Entry Type--

**Basis**

--Select Basis--

**Action**

--Select Action--

[Search]   [Reset]

Showing 1 to 1 of 1 records

| Posted Date | Liquidation Date | Voided Date | Event Type | Basis | Action | Entry Number | Port of Entry | Entry Date | Entry Type | Team |
|---|---|---|---|---|---|---|---|---|---|---|
| 09/06/2022 | 09/24/2021 | | Liquidated | Deemed Liquidation | No Change | DQ702213827 | 2002 | 09/06/2018 | 21 | JBG |

Show [ 25 ⌄ ] records

Previous   1   Next

Accessibility (http://www.cbp.gov/site-policy-notices/accessibility/)          DHS.gov (http://www.dhs.gov/)



(http://www.cbp.gov/)

OFFICIAL NOTICE OF EXTENSION, SUSPENSION AND LIQUIDATION

## Field Search

**Entry Number** ⓘ

DQ7-0221399-1

**Filer** ⓘ

**Importer of Record** ⓘ

**Surety Code**

**Port of Entry**

--Select Port of Entry--

**Liquidation Date**

|  | to |  |

**Posted Date**

|  | to |  |

**Entry Date**

|  | to |  |

**Voided Date**

|  | to |  |

**Event Type**

--Select Event Type--

**Entry Type**

--Select Entry Type--

**Basis**

--Select Basis--

**Action**

--Select Action--

[ Search ]   [ Reset ]

Showing 1 to 1 of 1 records

| Posted Date | Liquidation Date | Voided Date | Event Type | Basis | Action | Entry Number | Port of Entry | Entry Date | Entry Type | Team |
|---|---|---|---|---|---|---|---|---|---|---|
| 08/30/2022 | | | Suspended | AD/CVD Suspend | | DQ702213991 | 2002 | 09/06/2018 | 38 | 050 |

Show [ 25 ▾ ] records

Previous | 1 | Next

Accessibility (http://www.cbp.gov/site-policy-notices/accessibility/)          DHS.gov (http://www.dhs.gov/)

# U.S. Customs and Border Protection

Securing America's Borders

(http://www.cbp.gov/)

**OFFICIAL NOTICE OF EXTENSION, SUSPENSION AND LIQUIDATION**

## Field Search

### Entry Number ⓘ

DQ7-0221785-1

### Filer ⓘ

### Importer of Record ⓘ

### Surety Code

### Port of Entry

--Select Port of Entry--

### Liquidation Date

|  | to |  |

### Posted Date

|  | to |  |

### Entry Date

|  | to |  |

### Voided Date

|  | to |  |

### Event Type

--Select Event Type--

### Entry Type

--Select Entry Type--

### Basis

--Select Basis--



**Action**

--Select Action--

[Search] [Reset]

Showing 0 to 0 of 0 records

| Posted Date | Liquidation Date | Voided Date | Event Type | Basis | Action | Entry Number | Port of Entry | Entry Date | Entry Type | Team |
|---|---|---|---|---|---|---|---|---|---|---|

No records found

Accessibility (http://www.cbp.gov/site-policy-notices/accessibility/)   DHS.gov (http://www.dhs.gov/)



**U.S. Customs and Border Protection**
Securing America's Borders

(http://www.cbp.gov/)

OFFICIAL NOTICE OF EXTENSION, SUSPENSION AND LIQUIDATION

## Field Search

**Entry Number**   ⓘ

> DQ7-0221999-8

**Filer**   ⓘ

> 

**Importer of Record**   ⓘ

> 

**Surety Code**

> 

**Port of Entry**

> --Select Port of Entry--

**Liquidation Date**

>       to      

**Posted Date**

>       to      

**Entry Date**

>       to      

**Voided Date**

>       to      

**Event Type**

> --Select Event Type--

**Entry Type**

> --Select Entry Type--

**Basis**

> --Select Basis--



**Action**

--Select Action--

[ Search ]   [ Reset ]

Showing 0 to 0 of 0 records

| Posted Date | Liquidation Date | Voided Date | Event Type | Basis | Action | Entry Number | Port of Entry | Entry Date | Entry Type | Team |
|---|---|---|---|---|---|---|---|---|---|---|

No records found

Accessibility (http://www.cbp.gov/site-policy-notices/accessibility/)   DHS.gov (http://www.dhs.gov)



(http://www.cbp.gov/)

OFFICIAL NOTICE OF EXTENSION, SUSPENSION AND LIQUIDATION

## Field Search

**Entry Number**   ⓘ

> DQ7-0222061-6

**Filer**   ⓘ

> 

**Importer of Record**   ⓘ

> 

**Surety Code**

> 

**Port of Entry**

> --Select Port of Entry--

**Liquidation Date**

> | | to | |

**Posted Date**

> | | to | |

**Entry Date**

> | | to | |

**Voided Date**

> | | to | |

**Event Type**

> --Select Event Type--

**Entry Type**

> --Select Entry Type--

**Basis**

> --Select Basis--

**Action**

> --Select Action--

[ Search ]   [ Reset ]

Showing 1 to 1 of 1 records

| Posted Date | Liquidation Date | Voided Date | Event Type | Basis | Action | Entry Number | Port of Entry | Entry Date | Entry Type | Team |
|---|---|---|---|---|---|---|---|---|---|---|
| 08/30/2022 | | | Suspended | AD/CVD Suspend | | DQ702220616 | 2002 | 09/28/2018 | 38 | 050 |

Show [ 25 ▾ ] records

Previous   1   Next

Accessibility (http://www.cbp.gov/site-policy-notices/accessibility/)          DHS.gov (http://www.dhs.gov/)



**U.S. Customs and Border Protection** (http://www.cbp.gov/)
*Securing America's Borders*

OFFICIAL NOTICE OF EXTENSION, SUSPENSION AND LIQUIDATION

---

## Field Search

**Entry Number**   ⓘ

> DQ7-0222064-0

**Filer**   ⓘ

> 

**Importer of Record**   ⓘ

> 

**Surety Code**

> 

**Port of Entry**

> --Select Port of Entry--

**Liquidation Date**

> | | to | |

**Posted Date**

> | | to | |

**Entry Date**

> | | to | |

**Voided Date**

> | | to | |

**Event Type**

> --Select Event Type--

**Entry Type**

> --Select Entry Type--

**Basis**

> --Select Basis--

**Action**

--Select Action--

Search    Reset

Showing 0 to 0 of 0 records

| Posted Date | Liquidation Date | Voided Date | Event Type | Basis | Action | Entry Number | Port of Entry | Entry Date | Entry Type | Team |
|---|---|---|---|---|---|---|---|---|---|---|

No records found

Accessibility (http://www.cbp.gov/site-policy-notices/accessibility/)   DHS.gov (http://www.dhs.gov)

**Attachment 6**

**KI's Protest Nos. 200222100801 and 200222100819**

**Edward J. Thomas**

**From:**      acenotifyservice@cbp.dhs.gov
**Sent:**      Wednesday, March 16, 2022 4:32 PM
**To:**        Trade Service
**Subject:**   Protest created (200222100801)

**CAUTION:** External Email.

# Dear Customer,

Protest filed at Port 2002 has been accepted and assigned Protest No 200222100801.

**These pages are not susceptible to public summarization.**

**Edward J. Thomas**

| | |
|---|---|
| **From:** | acenotifyservice@cbp.dhs.gov |
| **Sent:** | Monday, June 27, 2022 5:02 PM |
| **To:** | Trade Service |
| **Subject:** | Protest created (200222100819) |

**CAUTION:** External Email.

## Dear Customer,

Protest filed at Port 2002 has been accepted and assigned Protest No 200222100819.

**These pages are not susceptible to public summarization.**

**Attachment 7**

**Denial of KI's Protest Nos. 200222100801 and 200222100819**

**Edward J. Thomas**

| | |
|---|---|
| **From:** | acenotifyservice@cbp.dhs.gov |
| **Sent:** | Thursday, April 7, 2022 6:07 PM |
| **To:** | Edward J. Thomas |
| **Subject:** | Protest Denied (200222100801) |

**CAUTION:** External Email.

## Dear Customer,

Protest No. 200222100801 filed at Port 2002 has been Denied for the following reasons:

Protest denied. Claim is filed untimely.

Any person whose protest has been denied, in whole or in part, has the right to file a civil action contesting the denial of the protest in accordance with chapter 169 of title 28 of the United States Code (28 USC §§ 2631 et seq.) within the time prescribed by section 2636 (28 USC § 2636).

**This page intentionally left blank.**

**Edward J. Thomas**

| | |
|---|---|
| **From:** | acenotifyservice@cbp.dhs.gov |
| **Sent:** | Wednesday, July 20, 2022 1:14 PM |
| **To:** | Trade Service |
| **Subject:** | Protest Denied (200222100819) |

**CAUTION:** External Email.

# Dear Customer,

Protest No. 200222100819 filed at Port 2002 has been Denied for the following reasons:

Protest denied. Claim is filed untimely.

Any person whose protest has been denied, in whole or in part, has the right to file a civil action contesting the denial of the protest in accordance with chapter 169 of title 28 of the United States Code (28 USC §§ 2631 et seq.) within the time prescribed by section 2636 (28 USC § 2636).

**Attachment 8**

**KPB's Protest No. 200222100800**

## Edward J. Thomas

**From:** acenotifyservice@cbp.dhs.gov
**Sent:** Wednesday, March 16, 2022 4:27 PM
**To:** Trade Service
**Subject:** Protest created (200222100800)

**CAUTION:** External Email.

## Dear Customer,

Protest filed at Port 2002 has been accepted and assigned Protest No 200222100800.

**These pages are not susceptible to public summarization.**

**Attachment 9**

**Denial of KPB's Protest No. 200222100800**

Show 10 records

## Protest # 200222100800

`AD Request`  `AFR`  `Input by Trade`                                                    Action ▾

| | | | | | |
|---|---|---|---|---|---|
| Protest Status | Denied | | | | |
| Protest Type | 514 Protest | Date Received | 03/16/2022 | Entry Number | DQ702213165 |
| Importer Number | 71-067961200 | Port Code | 2002 | Team Number | JBG |
| Decision Date | | Center ID | CEE010 - Machinery | | |

| | | | | | |
|---|---|---|---|---|---|
| Protest Filer Number | 19P000-0062300 | Protest Filer Type | Attorney | Refund C/O Number | |
| Protestant Number | 71-067961200 | Protestant Type | Importer/Consignee | | |
| Substitute Party Number | | Substitute Party Type | | | |

| | | | | | |
|---|---|---|---|---|---|
| Issue | AD/CVD | Secondary Issue | Liquidation/Reliquidation | Claimed Tariff | |
| Internal Advice Number | | Denied Claim Number | | Lead Protest Number | |
| AFR Requested | YES | Accelerated Disposition | YES | | |
| Sample Provided | NO | CBMA Acknowledged | | | |

**Reason for Protest** •••

Please see the attached document and detailed reasons for protest contained in Attachment B.  This protest covers five separate warehouse entries, which are covered under two separate warehouse in entries.  Attachment A-1 lists the warehouse in entries corresponding to the warehouse entries.  The five warehouse entry numbers are listed below:

| **Decision** | Entries | Parties | Summons | History | Documents | AFR | Post Decision | Additional Arguments |
|---|---|---|---|---|---|---|---|---|

| | |
|---|---|
| Decision | Denied |
| Comments (Note, for decisions of 'Denied' or 'Denied in Part', once approved by the Supervisor, this text will be sent to Trade as part of the Protest decision notification email) | Deemed Denied |
| Date/Time: | 07/29/2022 11:59 PM |

**Attachment 10**

**"Post Summary Corrections," *U.S. Customs and Border Protection* (last modified May 24, 2022)**



An official website of the United States government

Here's how you know

**U.S. Customs and Border Protection**

MENU

**Home** » **Trade** » **Programs and Administration** » **Entry Summary** »

Post Summary Correction

---

**Trade**

---

**Basic Importing and Exporting**

---

**Forced Labor**

---

**ACE and Automated Systems**

---

**CBP Green Trade Strategy**

---

**Programs and Administration**

---

**Account Management**

---

**Audits**

---

**Bonds**

---

**Customs Brokers**

---

**Determining Duty Rates**

---

**e-Allegations**

---

**Enforce and Protect Act (EAPA)**

---

**Entry Summary**

---

**Post Summary Correction**

---

**Protests**

---

**Reconciliation**

Remote Location Filing

Kimberley Diamonds

Penalties

Quotas

Suspension and Debarment

Trade Program Contacts

Priority Trade Issues

Rulings and Legal Decisions

Stakeholder Engagement

Trade Facilitation and Trade Enforcement Act

USMCA

**Trade**

# Post Summary Corrections

On June 24, 2011 CBP published a Federal Register Notice that announced the creation of Post Summary Correction (PSC) test (76 FR 37136). This notice stated that effective September 22, 2011, Post Entry Amendment (PEA) processing will no longer be accepted for ACE entry summaries. Submission of a PSC is the sole method for trade to electronically correct entry summaries prior to liquidation.

PSC operates under the 19 CFR 101.9(b), ACE prototypes. A filer would submit a PSC because they are legally obligated to correct an entry per 19 USC 1484 and 1485.

A PSC allows the trade to electronically correct entry summary data presented to and accepted by U.S. Customs and Border Protection through ACE. The trade is responsible for submitting a PSC. An authorized ACE entry summary filer may submit a PSC for an ACE entry summary originally submitted by another ACE entry summary filer if authorized by the same importer of record.

Post-Summary Corrections | U.S. Customs and Border Protection

A PSC is essentially **a new** entry summary and will not be processed until it is fully paid. There is no limit to the number of PSC filings that can be transmitted for an entry summary within the timeframe allowed to submit a PSC. PSCs that are team reviewed are not eligible for multiple PSC submissions.

PSC Criteria:

- An entry summary must be in accepted status.

- An entry summary cannot be under CBP review.

- An entry summary must be in CBP control.

- An entry summary must be paid in order for the PSC to be successfully submitted.

- If the entry summary is on a Periodic Monthly Statement (PMS), the entry must be "truly" paid in order for the PSC to be accepted. It may be up to 45 days following the entry date before CBP receives payment for the statement.

- The entry summary cannot be liquidated. If it's liquidated the filers options to correct the entry summary is to file a prior disclosure or a protest.

- PSC filers can submit these changes within 300 days from the date of entry and up to 15 days of the scheduled liquidation date, whichever date is earlier. If PSCs are filed outside the specified timeframes, ACE will automatically reject it.

Filing Timeframe Exceptions

1. A filer may also submit a PSC outside of the 300 day timeframe in situations where the importer requests a liquidation extension (see liquidation section below).

2. A filer may also submit a PSC outside of the 300 day timeframe, when the subject entries are: entry type 03 or 07 or 06 with a case number; are in suspended status; and have an associated suspension basis of CVD Suspend, ADD Suspend, AD/CVD Suspend, Subject to EAPA, or Subject to Court Injunction.

Changes Eligible Under PSCs:

The only permissible changes to entry types that can be made via PSC are a change from entry type 01 to 03, and a change from entry type 03 to 01.

PSC's may be filed on the following entry types:

- 01-Consumption

- 02- Consumption-Quota/Visa

- 03- Antidumping/Countervailing Duty

- 06-Consumption-Foreign Trade Zone (FTZ)

- 07-Consumption-Antidumping/Countervailing Duty and Quota/Visa Combination

- 21-Warehouse

- 22-Re-Warehouse

- 23-Temporary Importation Bond (TIB)

- 31-Warehouse Withdrawal-Consumption

- 32-Warehouse Withdrawal-Quota

- 34-Warehouse Withdrawal-Antidumping/Countervailing Duty

- 38-Warehouse Withdrawal-Antidumping/Countervailing Duty & Quota/Visa Combination

- 51-Defense Contract Administration Service Region (DCASR)

- 52-Government-Dutiable

Both revenue related and non-revenue related changes may be reported through the PSC test.  Revenue related are those that affect the amount of duties, taxes, and or fees applicable to an entry of merchandise, regardless of the de Minimis rule.  Non-revenue changes are those that pertain to information that must be provided in the entry summary.

Data that cannot be changed for all entry types:

- Importer of Record (The importer or broker must submit a CBP Form 3347, CBP will make the appropriate changes in ACE, and then the entry summary will be put back into the 314-day liquidation cycle. Once completed, the filer may transmit a PSC to correct the necessary entry summary data.)

- Consolidated summary indicator

- Port of Entry

- Cargo release certification request indicator (including DOT grouping, FDA grouping and PGA Grouping

- Live entry indicator

- Trade Agreement (19 U.S.C 1520(d)) indicator for specific special programs,

i.e. USMCA, NAFTA, CAFTA, DR, Chile, Columbia, Korea, Oman, Panama and Peru

- Reconciliation issue code

- Preliminary statement print date

- Periodic Monthly Statement (PMS)

- Statement client branch identifier

- Location of goods code

- Date of Entry

Filers are required to transmit one or more reason codes for requested changes, at either the header or line level, and a description of the change. See the Entry Summary Create/Update chapter in the ACE CATAIR. Up to five reason codes at the header and/or line level may be identified on a single PSC. Additional changes may also be detailed in the description field.

Liquidation:

A PSC is essentially **a new** entry summary and liquidates as any other entry summary since they are a complete replacement of the initial entry summary.

If requested, and Accelerated Liquidation be liquidated using the weekly liquidation cycle. If a filer submits an Accelerated Liquidation request on a PSC, CBP will strive to process within 60 calendar days from the date it was received.

If the trade deems a liquidation extension is necessary for the entry summary, the trade should request liquidation extension and ensure CBP approval prior to filing a PSC. If the trade is granted the extension, then the PSC does not have to be submitted within 300 days from the date of entry but the PSC has to be filed 15 days before the scheduled liquidated date.

References:

- **PSC Test Announcement - 76 FR 37136**

- **PSC Test Modifications and Clarifications Announcement- 78 FR 69434**

- **Modification and Clarification of the National Customs Automation Program Tests Regarding Post-Summary Corrections and Periodic Monthly Statements - 81 FR 89482**

- **Modification and Clarification of the National Customs Automation Program Tests Regarding Post-Summary Corrections and Periodic Monthly Statements; Republication With Correction and Further Clarification - 82 FR 2385**

- **Modification and Clarification of the National Customs Automation Program test Regarding Post-Summary Corrections and Periodic Monthly Statements - 82 FR 50656**

- **Modification of the National Customs Automation Program Test Regarding Post-Summary Corrections for Extensions of Liquidation - 84 FR 40430**

Technical and Policy Supporting Documents:

- **ACE Entry Summary Business Rules and Processes Document**

- **Entry/Entry Summary Customs and Trade Automated Interface Requirements (CATAIR)**

**Tags:** **Trade**, **Trade Outreach**, **Automated Commercial Environment (ACE)**

**Last Modified: May 24, 2022**

 Share This Page.

## Contact information for questions related to Post Summary Correction:

**otentrysummary@cbp.dhs.gov**

For more information on Trade Processes and Entry Summary, please view the **ACE Entry Summary Business Rules and Process Document.**

## Questions?



Find answers at the CBP Info Center.

**Top Travel Topics**

**Top Import/Export Topics**

[Return to top](#)

**Travel**    **Trade**    **Border Security**    **Newsroom**    **About CBP**    **Careers**

**Employee Resources**



**Contact CBP**



CBP.gov
**An official website of the U.S. Department of Homeland Security**

Accessibility

Accountability

DHS Components

FOIA

Forms

Inspector General

No FEAR Act

Privacy

Site Policies

The White House

USA.gov

# National Terrorism Advisory System

**Attachment 11**

**April 23, 2019 and May 3, 2019 E-mails Sent to U.S. Customs and Border Protection**

**This attachment is not susceptible to public summarization.**

**Attachment 12**

**Form 7501 Entry Summaries from 2018 and from October 2022**

**This attachment is not susceptible to public summarization.**

**Attachment 13**

**Entry Summary Status Notification Confirming Receipt of Uploaded End Use Certifications**

**This attachment is not susceptible to public summarization.**

**Attachment 14**

**Denial of KI's Post Summary Corrections**

**This attachment is not susceptible to public summarization.**

**Attachment 15**

*Carbon and Alloy Steel Wire Rod From the Republic of Korea:
Final Results of Antidumping Duty Administrative Review;
2017–2019*, 86 Fed. Reg. 15,461 (Dep't Commerce Mar. 23,
2021) and CBP Message No. 1118402 (April 28, 2021)


most recently completed segment of this proceeding in which the company participated; (3) if the exporter is not a firm covered in this review, a prior review, or in the investigation but the producer is, the cash deposit rate will be the rate established for the most recently completed segment of this proceeding for the producer of the merchandise; and (4) the cash deposit rate for all other producers or exporters will continue to be the all-others rate of 20.58 percent, the rate established in the investigation of this proceeding.[22] These cash deposit requirements, when imposed, shall remain in effect until further notice.

## Notification to Importers

This notice serves as a preliminary reminder to importers of their responsibility under 19 CFR 351.402(f)(2) to file a certificate regarding the reimbursement of antidumping duties prior to liquidation of the relevant entries during this review period. Failure to comply with this requirement could result in Commerce's presumption that reimbursement of antidumping duties occurred and the subsequent assessment of double antidumping duties.

## Notification to Interested Parties

We are issuing and publishing these preliminary results in accordance with sections 751(a)(1) and 777(i) of the Act, and 19 CFR 351.213(h)(1).

Dated: March 17, 2021.

**Christian Marsh,**

*Acting Assistant Secretary for Enforcement and Compliance.*

## Appendix

### List of Topics Discussed in the Preliminary Decision Memorandum

I. Summary
II. Background
III. Scope of the Order
IV. Preliminary Determination of No Shipments
V. Margin for Companies Not Selected for Individual Examination
VI. Discussion of the Methodology
VII. Recommendation

[FR Doc. 2021–05959 Filed 3–22–21; 8:45 am]

**BILLING CODE 3510–DS–P**

---

[22] *See Steel Concrete Reinforcing Bar from Mexico: Final Determination of Sales at Less Than Fair Value and Final Affirmative Determination of Critical Circumstances,* 79 FR 54967 (September 15, 2014).

---

# DEPARTMENT OF COMMERCE

## International Trade Administration

**[A–580–891]**

## Carbon and Alloy Steel Wire Rod From the Republic of Korea: Final Results of Antidumping Duty Administrative Review; 2017–2019

**AGENCY:** Enforcement and Compliance, International Trade Administration, Department of Commerce.

**SUMMARY:** The Department of Commerce (Commerce) determines that POSCO, a producer and exporter of carbon and alloy steel wire rod from the Republic of Korea (Korea) sold the subject merchandise at prices below normal value during the period of review (POR), October 31, 2017, through April 30, 2019.

**DATES:** Applicable March 23, 2021.

**FOR FURTHER INFORMATION CONTACT:** Lingjun Wang, AD/CVD Operations, Office VII, Enforcement and Compliance, International Trade Administration, U.S. Department of Commerce, 1401 Constitution Avenue NW, Washington, DC 20230; telephone: (202) 482–2316.

**SUPPLEMENTARY INFORMATION:**

## Background

On July 24, 2020, Commerce published the *Preliminary Results*[1] covering the sole producer and exporter of the subject merchandise subject to the review, POSCO. We invited interested parties to comment on the *Preliminary Results.* On September 28 and October 9, 2020, the petitioners[2] and POSCO filed case and rebuttal briefs.[3] On January 14 and 21, 2021, we held video conferences with the counsels for POSCO and the petitioners, respectively.[4] Commerce conducted this

---

[1] *See Carbon and Alloy Steel Wire Rod from the Republic of Korea: Preliminary Results of Antidumping Duty Administrative Review; 2017–2019,* 85 FR 44858 (July 24, 2020), and accompanying Preliminary Decision Memorandum.

[2] The petitioners are Charter Steel, Liberty Steel USA, Nucor Corporation, and Optimus Steel LLC (collectively, the petitioners).

[3] *See* Petitioners' Letter, "Carbon and Alloy Steel Wire Rod from the Republic of Korea—Petitioners' Case Brief," dated September 28, 2020; *see also* POSCO's Letter, "Carbon and Alloy Steel Wire Rod from the Republic of Korea—POSCO's Case Brief," dated September 28, 2020; Petitioners' Letter, "Carbon and Alloy Steel Wire Rod from the Republic of Korea—Petitioners' Rebuttal Brief," dated October 9, 2020; and POSCO's Letter, "Carbon and Alloy Steel Wire Rod from the Republic of Korea—POSCO's Rebuttal Brief," dated October 9, 2020.

[4] *See* Memoranda, "Carbon and Alloy Steel Wire Rod from the Republic of Korea—*Ex Parte* Meeting with POSCO's Counsel," dated January 15, 2021, and "Carbon and Alloy Steel Wire Rod from the

---

review in accordance with section 751(a) of the Tariff Act of 1930, as amended (the Act).

On April 24, 2020, Commerce tolled all deadlines in administrative reviews by 50 days.[5] Subsequently, on July 21, 2020, Commerce tolled all preliminary and final results in administrative reviews by an additional 60 days.[6] On December 1, 2020, we extended the deadline for issuing the final results until March 17, 2021.[7]

## Scope of the Order[8]

The scope of the *Order* includes certain hot-rolled products of carbon steel and alloy steel, in coils, of approximately round cross section, less than 19.00 mm in actual solid cross-sectional diameter. On April 8, 2019, Commerce excluded from the scope of the *Order* grade 1078 and higher tire cord quality wire rod used in the production of tire cord wire.[9] On June 13, 2019, Commerce excluded from the scope of the *Order* valve spring quality steel products defined as wire rod.[10] For a complete description of the scope of the *Order, see* the Issues and Decision Memorandum.[11]

## Analysis of Comments Received

We addressed all issues raised in the case and rebuttal briefs in the Issues and Decision Memorandum. A list of these issues is attached in an appendix to this

---

Republic of Korea—*Ex Parte* Meeting with Petitioners' Counsel," dated January 21, 2021.

[5] *See* Memorandum, "Tolling of Deadlines for Antidumping and Countervailing Duty Administrative Reviews in Response to Operational Adjustments Due to COVID–19," dated April 24, 2020.

[6] *See* Memorandum, "Tolling of Deadlines for Antidumping and Countervailing Duty Administrative Reviews," dated July 21, 2020 (the deadline for the final results was actually tolled by 57 days because the tolling started three days before the publication date of the *Preliminary Results*).

[7] *See* Memorandum, "Carbon and Alloy Steel Wire Rod from the Republic of Korea—Extension of Deadline for Final Results," dated December 1, 2020.

[8] *See Carbon and Alloy Steel Wire Rod from Italy, the Republic of Korea, Spain, the Republic of Turkey, and the United Kingdom: Antidumping Duty Orders and Amended Final Affirmative Antidumping Duty Determinations for Spain and the Republic of Turkey,* 83 FR 23417 (May 21, 2018) (*Order*).

[9] *See Carbon and Alloy Steel Wire Rod from the Republic of Korea and the United Kingdom: Notice of Final Results of Antidumping Duty Changed Circumstances Review,* 84 FR 13888 (April 8, 2019).

[10] *See Carbon and Alloy Steel Wire Rod from the Republic of Korea: Final Results of Antidumping Duty Changed Circumstances Review;* 84 FR 27582 (June 13, 2019).

[11] *See* Memorandum, "Issues and Decision Memorandum for the Final Results of Administrative Review of the Antidumping Duty Order on Carbon and Alloy Steel Wire Rod from the Republic of Korea; 2017–2019," dated concurrently with, and hereby adopted by, this notice (Issues and Decision Memorandum).

notice. The Issues and Decision Memorandum is a public document and is on file electronically via Enforcement and Compliance's Antidumping and Countervailing Duty Centralized Electronic Service System (ACCESS). ACCESS is available to registered users at *http://access.trade.gov.* In addition, a complete version of the Issues and Decision Memorandum can be accessed directly at *http://enforcement.trade.gov/ frn/index.html.*

**Changes Since the Preliminary Results**

We made two changes to the preliminary margin calculation: (1) We refined conversion costs by diameters using ratios derived from the reported production-line-month specific costs; (2) we corrected the beginning date for U.S. sales. For a full discussion of these changes, *see* Comments 1 and 2 in the Issues and Decision Memorandum.

**Final Results of the Review**

Commerce determines that the following weighted-average dumping margin exists for the period October 31, 2017 through April 30, 2019:

| Producer and/or exporter | Weighted-average dumping margin (percent) |
| --- | --- |
| POSCO ...................................... | 0.94 |

**Disclosure**

We intend to disclose the calculations performed for the final results of review within five days of the publication date of this notice in the **Federal Register**, in accordance with section 751(a) of the Act and 19 CFR 351.224(b).

**Assessment Rates**

Pursuant to section 751(a)(2)(C) of the Act and 19 CFR 351.212(b), Commerce shall determine, and U.S. Customs and Border Protection (CBP) shall assess, antidumping duties on all appropriate entries of subject merchandise in accordance with the final results of this review.[12] In accordance with 19 CFR 351.212(b)(1), Commerce calculated an importer-specific *ad valorem* antidumping assessment rate for POSCO that is not zero or *de minimis,* and will instruct CBP to assess antidumping duties on all appropriate entries covered by this review.

Consistent with Commerce's assessment practice, for entries of subject merchandise during the POR

produced by POSCO for which it did not know that the merchandise was destined for the United States, we will instruct CBP to liquidate unreviewed entries at the all-others rate if there is no rate for the intermediate company(ies) involved in the transaction.[13]

Consistent with its recent notice,[14] Commerce intends to issue assessment instructions to CBP no earlier than 35 days after the date of publication of the final results of this review in the **Federal Register**. If a timely summons is filed at the U.S. Court of International Trade, the assessment instructions will direct CBP not to liquidate relevant entries until the time for parties to file a request for a statutory injunction has expired (*i.e.,* within 90 days of publication).

**Cash Deposit Requirements**

The following cash deposit requirements will be effective for all shipments of subject merchandise entered, or withdrawn from warehouse, for consumption on or after the publication date of the final results of this administrative review, as provided by section 751(a)(2)(C) of the Act: (1) The cash deposit rate for POSCO is equal to the weighted-average dumping margin established in the final results of this review; (2) for previously investigated companies not participating in this review, the cash deposit rate will continue to be the company-specific rate published for the most recently completed segment of this proceeding; (3) if the exporter was not covered in this review or the investigation, but the producer was covered, the cash deposit rate will be the rate established in the most recently completed segment of this proceeding for the producer of subject merchandise; and (4) the cash deposit rate for all other producers or exporters will continue to be 41.10 percent, the all-others rate established in the original less-than-fair-value investigation.[15] These cash deposit requirements, when imposed, shall remain in effect until further notice.

**Notification to Importers**

This notice serves as a final reminder to importers of their responsibility under 19 CFR 351.402(f)(2) to file a certificate regarding the reimbursement

of antidumping duties prior to liquidation of the relevant entries during this review period. Failure to comply with this requirement could result in the presumption that reimbursement of antidumping duties occurred and the subsequent assessment of doubled antidumping duties.

**Administrative Protective Order**

This notice also serves as a reminder to parties subject to administrative protective order (APO) of their responsibility concerning the destruction of proprietary information disclosed under APO in accordance with 19 CFR 351.305(a)(3). Timely written notification of the return or destruction of APO materials or conversion to judicial protective order is hereby requested. Failure to comply with the regulations and terms of an APO is a sanctionable violation.

**Notification to Interested Parties**

We are issuing and publishing these final results in accordance with sections 751(a)(1) and 777(i)(1) of the Act, and 19 CFR 351.213(h) and 351.221(b)(5).

Dated: March 16, 2021.

**Christian Marsh,**
*Acting Assistant Secretary for Enforcement and Compliance.*

**Appendix**

**List of Topics Discussed in the Issues and Decision Memorandum**

I. Summary
II. Background
III. Scope of the Order
IV. Changes Since the Preliminary Results
V. Discussion of Issues
  Comment 1: Whether Commerce Should Apply AFA to POSCO's Reported Cost
  Comment 2: Whether the Beginning Dates in the Margin Program are Correct
  Comment 3: Whether U.S. Sales of Further-Manufactured Merchandise Should be Excluded
  Comment 4: Whether to Grant POSCO a Constructed Export Price (CEP) Offset
VI. Recommendation

[FR Doc. 2021–05960 Filed 3–22–21; 8:45 am]

**BILLING CODE 3510–DS–P**

---

**DEPARTMENT OF COMMERCE**

**International Trade Administration**

**[A–588–869]**

**Diffusion-Annealed, Nickel-Plated Flat-Rolled Steel Products From Japan: Final Results of the Antidumping Duty Administrative Review; 2018–2019**

**AGENCY:** Enforcement and Compliance, International Trade Administration, Department of Commerce.
**SUMMARY:** The Department of Commerce (Commerce) finds that sales of diffusion-

---

[12] *See Antidumping Proceeding: Calculation of the Weighted-Average Dumping Margin and Assessment Rate in Certain Antidumping Duty Proceedings; Final Modification,* 77 FR 8101 (February 14, 2012).

[13] *See Antidumping and Countervailing Duty Proceedings: Assessment of Antidumping Duties,* 68 FR 23954 (May 6, 2003).

[14] *See Notice of Discontinuation of Policy to Issue Liquidation Instructions After 15 Days in Applicable Antidumping and Countervailing Duty Administrative Proceedings,* 86 FR 3995 (January 15, 2021).

[15] *See Order.*

| | | | |
|---|---|---|---|
| **MESSAGE NO.** | 1118402 | **MESSAGE DATE** | 04/28/2021 |
| **STATUS** | Active | **INACTIVATED DATE** | |
| **TYPE** | LIQ-Liquidation | **FR CITE** | 86 FR 15461 |
| **SUB-TYPE** | ADMIN RVW-Administrative Rvw | **FR DATE** | 03/23/2021 |
| **CATEGORY ACCESS** | AD | **EFFECTIVE DATE** | 03/23/2021 |
| **TYPE** | Public ✔  Non-Public ☐ | **POI/POR DATE** | 10/31/2017 - 04/30/2019 |
| **Notice of lifting of Suspension Date** | 03/23/2021 | **PERIOD COVERED** | - |

**SHORT CASE NAME**

Steel Wire Rod

**COURT CASE #s**

**REF MESSAGE #s**

8142302

**PRINCIPAL CASE #s**

A580891

**3rd Country CASE #s**

**RE:**   Liquidation instructions for carbon and alloy steel wire rod from the Republic of Korea: POSCO for the period 10/31/2017 through 04/30/2019 (A-580-891)

1.  For all shipments of carbon and alloy steel wire rod from the Republic of Korea (Korea) produced and exported by POSCO (A-580-891-001), imported by or sold to (as indicated on the commercial invoice or Customs documentation) the firms listed below, and entered, or withdrawn from warehouse, for consumption during the period 10/31/2017 through 04/30/2019, assess an antidumping liability equal to the percentages listed below of the entered value unless paragraph 2 or 5 applies:

Importer or customer:  POSCO America Corporation
Final rate:  0.94%

2.  If a cash deposit was collected as security for an estimated antidumping duty for any shipment of merchandise described in paragraph 1 that was entered, or withdrawn from warehouse, for consumption during the period 10/31/2017 through 04/28/2018, assess antidumping duty liabilities equal to the amount resulting from the application of paragraph 1 or equal to the amount of the cash deposit, whichever is less.

3.  For all shipments of carbon and alloy steel wire rod from Korea produced by POSCO, entered, or withdrawn from warehouse, for consumption during the period 10/31/2017 through 04/30/2019, entered under case number A-580-891-001, and not covered by paragraph 1, assess antidumping duties at the all-others rate in effect on the date of entry, unless paragraph 4 or 5 applies.

4.  If a cash deposit was collected as security for an estimated antidumping duty for any shipment of merchandise described in paragraph 3 that was entered, or withdrawn from warehouse, for consumption during the period 10/31/2017 through 04/28/2018, assess antidumping liabilities equal to the all-others rate in effect on the date of entry or equal to the amount of the cash deposit, whichever is less.

5.  Entries for the period 04/29/2018 through 05/16/2018, should be liquidated via message 8142302, dated 05/22/2018.

6.  Notice of the lifting of suspension of liquidation of entries of subject merchandise covered by paragraphs 1 and 3 occurred with the publication of the final results of administrative review (86 FR 15461) on 03/23/2021.  Unless instructed otherwise, for all other shipments of carbon and alloy steel wire rod from Korea you shall continue to collect cash deposits of estimated antidumping duties for the merchandise at the current rates.

7.  There are no injunctions applicable to the entries covered by this instruction.

8.  The assessment of antidumping duties by CBP on shipments or entries of this merchandise is subject to the provisions of section 778 of the Tariff Act of 1930, as amended.  Section 778 requires that CBP pay interest on overpayments or assess interest on underpayments of the required amounts deposited as estimated antidumping duties.  The interest provisions are not applicable to cash posted as estimated antidumping duties before the date of publication of the antidumping duty order.  Interest

shall be calculated from the date payment of estimated antidumping duties is required through the date of liquidation.  The rate at which such interest is payable is the rate in effect under section 6621 of the Internal Revenue Code of 1954 for such period.

9.  Upon assessment of antidumping duties, CBP shall require that the importer provide a reimbursement statement, as described in section 351.402(f)(2) of Commerce's regulations.  The importer should provide the reimbursement statement prior to liquidation of the entry.  If the importer certifies that it has an agreement with the producer, seller, or exporter, to be reimbursed antidumping duties, CBP shall double the antidumping duties in accordance with the above-referenced regulation. Additionally, if the importer does not provide the reimbursement statement prior to liquidation, reimbursement shall be presumed and CBP shall double the antidumping duties due.   If an importer timely files a protest challenging the presumption of reimbursement and doubling of duties, consistent with CBP's protest process, CBP may accept the reimbursement statement filed with the protest to rebut the presumption of reimbursement.

10.  If there are any questions by the importing public regarding this message, please contact the Call Center for the Office of AD/CVD Operations, Enforcement and Compliance, International Trade Administration, U.S. Department of Commerce at (202) 482-0984.  CBP ports should submit their inquiries through authorized CBP channels only.  (This message was generated by OVII:LW.)

11. There are no restrictions on the release of this information.

Alexander Amdur

**Attachment 16**

**Correspondence Between KI's and KPB's Broker and U.S. Customs and Border Protection Between April 2020 – July 2021**

**This attachment is not susceptible to public summarization.**

**Attachment 17**

**Correspondence Between KI's and KPB's Counsel and U.S. Customs and Border Protection Between April 2022 – June 2022**

**This attachment is not susceptible to public summarization.**